UNITED STATES, Appellee

v

ROBERT E. WELKER, Private E-2, U. S. Army, Appellant

8 USCMA 647, 25 CMR 151

*Colonel Edward M. O'Connell* and *First Lieutenant Stephen D. Potts* were on the brief for Appellant, Accused.

*Major Thomas J. Nichols* was on the brief for Appellee, United States.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was charged with a three-day unauthorized absence, in violation of Article 86, Uniform Code of Military Justice (Charge I), failure to obey an order to report to his commanding officer, in violation of Article 92 (Charge II), and two specifications alleging, respectively, the larceny of a Government telescope of the value of $95 and a Government rifle of the value of $94.30, in violation of Article 121 (Charge III), 10 USC §§ 886, 892, 921. He entered a plea of guilty to all charges. A stipulation was then admitted in evidence "to acquaint the court members with the facts in this case." In part, the stipulation recites the following:

"On or about 14 January 1957, I returned from maneuvers at Fort Bragg, North Carolina and met Pfc Jim Butler, 504th Med Company. He told me that he had found an M-1 rifle leaning against a tree while on maneuvers, he further told me that he had hid this rifle in a lake on Manchester road, Fort Bragg, North Carolina, and had marked the place by sticking a stick in the ground beside the lake. Butler told me if I wanted the rifle I could have it, as he wanted no part of it. On or about the night of 15 January 1957, Pfc Carroll W. Smith, Third Army Ordnance Battalion, his wife, myself and my wife Catherine drove to the lake in a borrowed car and I waded out

in the lake and recovered the rifle. I took the rifle home and cleaned it up and kept the rifle around the house until sometime in February 1957, when I packed my household goods and I placed the rifle and telescopic sight with the household goods."

No further evidence was presented. After findings of guilty had been returned by the court, trial counsel read the accused's personal data from the first page of the charge sheet. Part of the information is to the effect that the accused was then twenty years of age; that he had an allotment; and that he had been in the service for approximately two years. Evidence of one previous conviction on two specifications of unauthorized absence was admitted. No matter in mitigation was presented by the accused and the defense counsel made no argument as to the sentence. The law officer instructed the court members that the maximum punishment included confinement at hard labor for ten years and seven months. After five minutes of closed session deliberation, the court sentenced the accused to a dishonorable discharge, total forfeitures and confinement at hard labor for ten years and seven months.

Two things stand out with special clarity. First, the accused's plea of guilty to the theft of the rifle is patently inconsistent with the stipulation as

to the "facts." The latter unmistakably shows that the accused did not steal the weapon. In its worse light, it shows the receipt of property known to be stolen. United States v McFarland, 8 USCMA 42, 23 CMR 266. Consequently, the plea of guilty to this charge should not have been accepted. United States v Messenger, 2 USCMA 21, 6 CMR 21; United States v Gentry, 21 CMR 361.

The second matter which is especially noteworthy is that the circumstances suggest "the court surmised from the accused's plea of guilty that he had an agreement with the convening authority as to the maximum sentence and abdicated their function of adjudging an appropriate sentence in the case." United States v Buckland, CM 394524, decide February 19, 1957. We need not make a specific ruling on this point, but it is appropriate to point out that there seems to be a disposition on the part of courts-martial, in cases in which a plea of guilty is entered and no evidence in mitigation is presented, "automatically [to] conclude that the accused had made a pretrial agreement as to the sentence and . . . [therefore, they] see no real purpose in their devoting time and effort to consideration of an appropriate punishment." United States v Ratliff, CM 394573, decided February 12, 1957. This disposition appears to be connected with a tendency on the part of defense counsel to present no evidence, and to make no argument, in mitigation when there is an agreement with the convening authority on the plea and the sentence. The latter practice has already brought a number of cases to this Court on a claim by the accused that he was inadequately represented at the trial. See United States v Allen, 8 USCMA 504, 25 CMR 8; United States v Elkins, 8 USCMA 611, 25 CMR 115; United States v Armell, 8 USCMA 513, 25 CMR 17. The issue has also been raised in this case. A continuation of these trends may require reexamination of the practice of negotiating agreement on the plea and the sentence with the convening authority. Cf. United States v Allums, 5 USCMA 435, 18 CMR 59.

Since the findings of guilty on specification 2 of Charge III are based upon an improvident plea, they must be set aside. The stipulation of "facts" shows an offense different from that alleged in the specification and not included within it. United States v McFarland, supra. Therefore, the specification must be dismissed. As a result, the permissible maximum sentence is almost half that which the law officer instructed the court members could be legally adjudged. These, and other circumstances in the case, require a rehearing on the accused's sentence by a court-martial. See United States v Oakley, 7 USCMA 733, 23 CMR 197.

The findings of guilty as to specification 2 of Charge III are set aside and the specification is ordered dismissed. The sentence is set aside and a rehearing thereon is ordered.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

The majority opinion disturbs me both procedurally and substantively, for it predicates a reversal on an issue neither raised, granted by us, briefed, nor argued, to reach an erroneous result. Unless we conclude that all lawyers who have participated in this case overlooked the obvious, the failure to notice the error ought to demonstrate that there was little substance to it. Surely some attorney participating in the trial or reading the record on appeal ought to have considered the hypothesis which the Court seems to indicate is evident. I use the phrase "little substance" advisedly, for I believe the Court's rationale is so contrary to the Code, military law, and a great body of civilian law that it cannot be supported. To substantiate that statement, I first quote Article 121 of the Code. It provides:

"(a) Any person subject to this chapter who wrongfully takes, obtains, or withholds, by any means, from the possession of the owner or of any other person any money, personal property, or article of value of any kind—

(1) with intent permanently to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner, steals that property and is guilty of larceny;

. . . . .

(b) Any person found guilty of larceny . . . shall be punished as a court-martial may direct."

It should be noted from the punitive Article that anyone who withholds property from the rightful owner with intent permanently to deprive him of its benefit and use is guilty of larceny. Under that definition, the original possession could be either rightful or wrongful. Even if I contemplate the former possibility, the inference that accused was guilty of larceny may be drawn from his stipulation.

Three statements of fundamental law will suffice to show that the majority ignores the general rule applied in both military and civilian courts. Paragraph 200a(7), Manual for Courts-Martial, United States, 1951, in part, provides:

"A taking or withholding of lost property by the finder is larceny if accompanied by an intent to steal and if a clue to the identity of the general or special owner, or through which such identity may be traced, is furnished by the character, location, or marking of the property, or by other circumstances."

I find the same principle stated in 52 CJS, Larceny, § 49.

"A finder of lost goods may be guilty of larceny if at the time of the finding he had the felonious intent to appropriate them to his own use and knowledge or means of knowledge of the ownership of them, . . ."

Again in Larceny, 32 Am Jur, § 63, the following statement may be found:

". . . Under certain circumstances, and subject to the rules requiring a criminal intent, one who finds, takes, and carries away personal property not his own may be guilty of larceny. This is true where the property has been casually lost, as well as where it has been mislaid or mistakenly left by the owner, although not where it has been voluntarily abandoned, since such property is not the subject of larceny and there can be no trespass in its taking."

The specification alleged that the accused stole an M-1 rifle, of a certain serial number and value, which was the property of the United States Government. That was admitted by the plea, and so we need not be concerned about accused's knowledge of ownership. Private First Class Butler's possession of the rifle, which may be considered either that of a thief or a mere custodian, was abandoned when, having disposed of the weapon in the lake, he stated to the accused that "he wanted no part of it." His abandonment did not divest the Government of its right to the property, and there is not the slightest reason to conclude an intent to abandon on its part. While not set out by my associates, accused's intent to appropriate the rifle to his own use is patently demonstrated by the last part of the stipulation of facts. There I find this question and the accused's answer:

"Q. What were you going to do with the M-1 rifle and the telescopic sight?

"A. I planned on making a sport rifle out of the M-1, and using the telescopic sight as a hunting scope."

All elements of larceny are established by the stipulation and I can hardly refer the reader to a clearer case of that kind. For the Court to place a burden on the law officer to set aside a plea of guilty on the showing found in this record is penalizing him for understanding the law.

The issue upon which we granted review in this case was: "Whether the accused was prejudiced by the failure of defense counsel to present anything in mitigation." The majority opinion states that: "No matter in mitigation was presented by the accused and the

defense counsel made no argument as to the sentence," but thereafter the matter is not further discussed. Under the Court's disposition, no discussion is required, but my conclusion compels a resolution of the granted issue. I would place this case in the category of United States v Friborg, 8 USCMA 515, 25 CMR 19. Here the accused pleaded guilty to four serious offenses. The record shows one previous conviction and a civilian and military record which, to say the least, was not satisfactory. His final sentence is entirely consistent with those imposed in similar cases, and I, therefore, find nothing in the record which shows that defense counsel erred in not arguing in mitigation and extenuation.

I would affirm the decision of the board of review.