UNITED STATES, Appellee

v

JOSEPH A. BROWN, Acting Sergeant, U. S. Marine Corps, Appellant

11 USCMA 207, 29 CMR 23

No. 13,373

Decided January 29, 1960

*Commander John P. Gibbons*, USN, argued the cause for Appellant, Accused. With him on the brief was *Captain H. H. Brandenburg, USN*.

*Major Ted H. Collins*, USMC, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel J. E. Stauffer*, USMC.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Brought to trial before a special court-martial, the accused pleaded guilty to five separate offenses; viz, three larcenies, a breach of restriction, and wrongfully having in his possession with intent to deceive an unauthorized armed forces liberty pass. He was sentenced to a bad-conduct discharge, confinement at hard labor for six months, and forfeiture of $70.00 per month for the same period of time. The convening authority and the officer exercising supervisory authority affirmed the findings and sentence with the exceptions of the forfeitures, which were reduced to $43.00 per month for six months and the bad-conduct discharge which was suspended until accused's release from confinement or the completion of appellate review, whichever occurred at the later date. When the record was being processed at the convening authority level, that officer as part of his action made the following statement:

"The accused pleaded guilty to three specifications of larceny. Acting Corporal William L. Weekly, U. S. Marine Corps, reported the theft of a National Transistor portable radio from his foot locker to the Investigation Section, Marine Corps Air Facility on 4 February 1959. Two days later, Acting Corporal Joseph W. Bourland, U. S. Marine Corps, reported the theft of a Polaroid Land Camera from his wall locker. During the interview with the Investigator, Weekly stated that the Japanese houseboys had observed the accused in the vicinity of his foot locker with a pair of long pliers on the date of the theft of his radio. The accused, after being properly warned under the provisions of Article 31, stated that he had taken the radio and camera but had given them to two friends to be held for him until he arrived at Treasure Island, California. The camera and radio were recovered and indentified by the owners. Acting Staff Sergeant Thomas M. Ereth, U. S.

208

Marine Corps, reported to the Investigator that he had reason to believe that the accused had stolen his car coat and described it. The accused admitted having a coat of that description but stated that he had purchased it from a man who had since returned to the United States. The accused agreed voluntarily to a search of his personal effects. A car coat was recovered which was identified by Acting Staff Sergeant Ereth as being his."

Some three days thereafter and after having requested representation before the board of review, accused prepared an unsworn written statement in rebuttal of the quoted comments and while it has no addressee and shows no receipt by any appellate authority, we assume it must have been forwarded to the officer exercising general court-martial jurisdiction, for it is mentioned by the staff legal officer in his post-trial review. We quote it in full:

"In rebuttal of the synopsis of offenses as outlined by the convening authority I wish to state that at the time the search of my personal effects was made I owned a carcoat, but I do not know its present whereabouts. As regards the camera in question, it was at one time in pawn to me for ten dollars and Sgt Amos came to me and said he wanted to borrow the camera to take pictures with it. After he borrowed the camera he never returned it to me. He never paid me the ten dollars he owed me on it either. I had the pliers out making a ring at the time. Also, I did not give the radio to any person to return to me when I got back to the States. I took the radio but never intended to keep it. The locker was open and I was listening to the radio while working on a ring I was making. But I remember I borrowed a field jacket from a friend on the other side of the base. At the time I didn't know that the radio was in the field jacket when I picked the field jacket up to return it. I ask [sic] my friend could I leave in his wall locker while I played a few games of pool. On returning to my barracks I hadn't realized I left the radio behind."

Subsequently, when the matter came on for hearing before a board of review, the accused assigned as error that his plea of guilty was improvidently entered. In support of the assignment, he directed attention to the rebuttal statement which is hereinabove quoted. The board of review, relying upon United States v Hood, 8 USCMA 473, 24 CMR 283, and United States v Lemieux, 10 USCMA 10, 27 CMR 84, and supported by a Government concession, concluded that the portion of the statement concerning the radio was inconsistent with accused's plea of guilty to larceny of that instrument but that it was consonant with a finding of wrongful appropriation thereof, and it thereupon affirmed only that lesser crime. The findings on the other offenses were found to be proper and the sentence, having been examined in the light of the corrected findings, was determined to be appropriate for all of the offenses which were approved by the board. Thereafter, we granted accused's petition for review to determine whether his plea of guilty was shown to have been improvident as to the larcenies charged.

Because of the views expressed in the separate opinions of my associates, the following development reflects only the beliefs of the author judge. As will appear from the following quotations from the Code and Manual, the principles governing the setting aside of a plea of guilty during trial are firmly established. Article 45(a), Uniform Code of Military Justice, 10 USC § 845, provides:

"If an accused arraigned before a court-martial makes an irregular pleading, or after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect, or if he fails or refuses to plead, a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty."

Paragraph 75a, Manual for Courts-Martial, United States, 1951, in treat-

ing with presentencing procedure, has this to say:

"After the court has announced findings of guilty, the prosecution and defense may present appropriate matter to aid the court in determining the kind and amount of punishment to be imposed.

"Matter which is presented to the court after findings of guilty have been announced may not be considered as evidence against the accused in determining the legal sufficiency of such findings of guilty upon review. If any matter inconsistent with a plea of guilty is received, or if it appears from any matter received that a plea of guilty was entered improvidently, the court should take the action outlined in 70."

Again, the Manual, in paragraph 70b, sets out the proposition in this language:

"Whenever an accused, in the course of trial following a plea of guilty, makes a statement to the court, in his testimony or otherwise, inconsistent with the plea, the court will make such explanation and statement as the occasion requires. If, after such explanation and statement, it appears to the court that the accused in fact entered the plea improvidently or through lack of understanding of its meaning and effect, or if the accused does not voluntarily withdraw his inconsistent statement, the court will proceed to trial and judgment as if he had pleaded not guilty. See Article 45a."

It is to be noted that in all instances the quoted authorities are dealing with a situation where the improvidence or the irregularity is unearthed prior to the time the court-martial has returned a sentence. At that early stage of the proceedings, difficulty is not encountered in going forward with the trial on the merits if the plea is withdrawn, but thereafter conditions change.

A plea of guilty is a judicial admission of guilt. While some recantation can be permitted before the trial proceedings have terminated, once the appeal reaches appellate

channels the plea should not be set aside except upon a strong and convincing showing of the deprivation of a legal right by extrinsic causes; certainly not merely by an *ex parte* unsworn statement setting out facts which could have been questioned had there been an opportunity at trial.

Nothing we said in United States v Hood, supra, is contrary to the above-announced rule. There we were concerned with whether certain specifications alleged offenses that, for punishment purposes, were multiplicious. The record of trial was devoid of facts which cast light on the issue, but the pretrial papers, the staff judge advocate's post-trial review, and a concession by the Government caused this Court to hold there was multiplicity. We were not there concerned with setting aside a plea of guilty because of a belated attempt to challenge a judicial admission of the facts pleaded. That case is, therefore, no authority for the proposition that post-trial statements of an accused may be used to undermine a guilty plea entered after proper advice of its meaning and effect.

In United States v Lemieux, supra, we did have before us for consideration the providence of an accused's plea of guilty. In that instance, the staff judge advocate in his post-trial review quoted the accused as saying, "The accused states he lived as man and wife for several years with the woman who received the allotment checks, subject of the present charges, but that he has never been married." At a later time in the review, the accused was again quoted as having said, "he had been told that living with a woman for two years established a 'common law marriage' although he admits he did not attempt to verify this information." We held the facts did not show improvidence but a majority of the Court volunteered the information that unsworn statements made by an accused to the staff judge advocate may be used to support a finding by this Court that a plea of guilty was improvident. The author judge of this opinion specifically reserved that question as not being before us for consideration, but that prin-

ciple need not be extended to control the decision in this case.

Generally speaking, this Court has adopted the rule that for some purposes the action of the convening authority is so intertwined with the trial as to be considered part and parcel of that hearing. For this reason, matters which are directed to his attention are often considered as if they had been called to the attention of the court-martial. Certainly, if he is informed of facts which on their face are hostile to or inconsistent with a plea of guilty, he can grant the accused a rehearing on the merits without importing disorder into the judicial system. No sentence can be executed until approved by him and, while if the accused waits until that time to challenge the plea he may stand to profit on the sentence, still the proceedings have not reached a stage where finalized findings and sentence are impeached by an informal *ex parte* statement of a dissatisfied accused. However, once the proceedings have passed beyond the control of the convening authority, it would make for a most disorderly appellate process to set aside a valid conviction based on a judicial confession of guilt merely because an accused forwards an unsworn statement to reviewing authorities saying the facts to which he pleaded guilty are not so. Every appellate agency would be required to retry the facts, and an accused could not lose. It is to be remembered that under present military law, unless founded on a legal error, the lowest sentence assessed by a court or affirmed by any reviewing authority is the maximum sentence which can be imposed on an accused on a rehearing, regardless of the number of trials. If, therefore, a procedure were approved by us which would allow an accused to upset the findings of guilt by the filing of an unsworn and self-serving statement on appeal, it would be to his benefit to plead guilty, obtain all possible clemency by reviewing authorities and then file his document with us. That way he would be bound to win, for his plea of guilty is not usable against him on a rehearing and a maximum sentence would be fixed much below the Table of Maximum Punishments. Moreover, he would be given the benefit of a full-scale one-sided hearing without being subjected to cross-examination on his statement and without being tested for his veracity. To authorize that sort of appellate proceeding would be to render a plea of guilty farcical.

There is yet another reason why improvidence of a plea should not be permitted to be raised in the █ manner herein attempted after the case clears the convening authority. Article 73 of the Uniform Code of Military Justice, 10 USC § 873, grants an accused the right to petition for a new trial at any time within one year after approval by a convening authority. This type of proceeding will afford an accused a remedy even though his case may be pending on appeal if he can bring himself within the terms of the statute. Two separate grounds are therein stated for relief. One is newly discovered evidence and the other is fraud on the court. While it is unnecessary at this time to interpret the meaning of the phrase "fraud on the court," nevertheless it is apparent that in an appropriate case an accused could use that method of procedure to obtain relief if he in fact has pleaded guilty to an offense of which he is innocent.

Finally, if we give the accused the benefit of an assumption not supported by the record and consider █ the document as having been forwarded to the convening authority and considered by him, we cannot say he abused his discretion in not granting a rehearing and permitting the accused to change his plea. Accused did not request that relief, and in his statement he does not claim innocence, inadvertence, or mistake. Moreover, he fails to assert any facts which necessarily are in opposition to those set out in the specifications. Everything he states could be accepted at face value, and he could be guilty of larceny of the coat and camera, and the other offenses affirmed by the board of review. He judicially confessed he was, and we find no reason to set aside his pleas to the specifications which allege those offenses.

The decision of the board of review is affirmed.

QUINN, Chief Judge (concurring):

All the accused has presented in his unsworn rebuttal statement is a partial conflict with the prosecution's case and his own ▮ pretrial statements and actions. Thus the post-trial review shows that after being advised of his rights under Article 31, the accused confessed he took the Polaroid Land Camera. In the post-trial statement he says it was "at one time in pawn" to him. The camera may indeed have been pawned with him, but this circumstance is not in anyway inconsistent with the fact he also stole it from the wall locker of the owner. Plainly, therefore, the situation here is entirely different from one in which an undisputed statement by the accused shows he was mistaken as to the legal effect of his conduct. United States v Welker, 8 USCMA 647, 25 CMR 151; United States v Lenton, 8 USCMA 690, 25 CMR 194. I concur in the conclusion that there is a wholly insufficient showing the accused's plea of guilty was improvident. See United States v Hinton, 8 USCMA 39, 23 CMR 263; United States v McCoy, 5 USCMA 246, 17 CMR 246.

FERGUSON, Judge (dissenting):

I dissent.

I sincerely regret I am unable to join with either of my brothers in their separate opinions, which have the effect of affirming accused's conviction on Charge I and its specifications. The result of our differing approaches is that no guidance is furnished to those charged with the administration of military justice and no great advantage is gained by either side, for, even though his sentence is affirmed, this accused has been returned to inactive duty with a probationally suspended punitive discharge, the execution of which must be remitted with the delivery of our mandate. However, I cannot in good conscience conclude that accused's post-trial statement is not in conflict with his earlier plea of guilty, and, under the circumstances which I hereinafter set forth, I believe the in-

consistency demands that we reverse and remand.

Tried by special court-martial, the accused, among other offenses, pleaded guilty to three specifications of larceny, in violation of the Uniform Code of Military Justice, Article 121, 10 USC § 921. He was found guilty as charged, and sentenced to bad-conduct discharge, partial forfeitures, and confinement at hard labor for six months. Intermediate appellate authorities affirmed, although the board of review deemed accused's plea partially improvident and reduced the findings concerning one specification of larceny to wrongful appropriation. We granted review on the issue of the providence of accused's plea of guilty to the three specifications of larceny.

The three offenses alleged are, respectively, that accused stole a car coat, a radio, and a camera. No evidence was adduced at the trial, the Government choosing to rely upon accused's plea. Following receipt of the latter, the president of the court advised the accused as follows:

"PRES: Sergeant Joseph A. Brown, you have pleaded guilty to all charges and specifications. By so doing, you have admitted every act or omission charged and every element of those offenses. Your plea subjects you to a finding of guilty without further proof of those offenses, in which event you may be sentenced by the court to the maximum punishment authorized for it. Has the accused been advised by the defense counsel of the maximum punishment authorized in this case for which he has pleaded guilty?

"DC: Yes, sir.

"PRES: You are legally entitled to plead not guilty and place the burden upon the prosecution of proving your guilt of those offenses. Your plea will not be accepted unless you understand its meaning and effect. Do you understand?

"ACCUSED: Yes, sir.

"PRES: Understanding this, do you persist in your plea of guilty?

"ACCUSED: Yes, sir."

After the trial, the convening au-

212

thority took his action upon the record. In that document he set forth the following:

"The accused pleaded guilty to three specifications of larceny. Acting Corporal William L. Weekly, U. S. Marine Corps, reported the theft of a National Transistor portable radio from his foot locker to the Investigation Section, Marine Corps Air Facility on 4 February 1959. Two days later, Acting Corporal Joseph W. Bourland, U. S. Marine Corps, reported the theft of a Polariod Land Camera from his wall locker. During the interview with the investigator, Weekly stated that the Japanese houseboys had observed the accused in the vicinity of his foot locker with a pair of long pliers on the date of the theft of his radio. The accused, after being properly warned under the provisions of Article 31, stated that he had taken the radio and camera but had given them to two friends to be held for him until he arrived at Treasure Island, California. The camera and radio were recovered and indentified by the owners. Acting Staff Sergeant Thomas M. Ereth, U. S. Marine Corps, reported to the Investigator that he had reason to believe that the accused had stolen his car coat and described it. The accused admitted having a coat of that description but stated that he had purchased it from a man who had since returned to the United States. The accused agreed voluntarily to a search of his personal effects. A car coat was recovered which was identified by Acting Staff Sergent Ereth as being his."

Three days later, the accused submitted a statement in rebuttal to the above remarks of the convening authority:

"In rebuttal of the synopsis of offenses as outlined by the convening authority I wish to state that at the time the search of my personal effects was made I owned a carcoat, but I do not know its present whereabouts. As regards the camera in question, it was at one time in pawn to me for ten dollars and Sgt Amos came to me and said he wanted to borrow the camera to take pictures with it. After he borrowed the camera he never returned it to me. He never paid me the ten dollars he owed me on it either. I had the pliers out making a ring at the time. Also, I did not give the radio to any person to return to me when I got back to the States. I took the radio but never intended to keep it. The locker was open and I was listening to the radio while working on a ring I was making. But I remember I borrowed a field jacket from a friend on the other side of the base. At the time I didn't know that the radio was in the field jacket when I picked the field jacket up to return it. I ask [sic] my friend could I leave [it] in his wall locker while I played a few games of pool. On returning to my barracks I hadn't realized I left the radio behind."

The convening authority's comments and the accused's statement in rebuttal were made known to the supervisory authority in his staff legal officer's review. However, that advisor omitted any discussion of the conflicts between the two documents and apparently did not consider the effect of the post-trial statement upon accused's plea. The board of review considered that issue but found the accused's declaration was only inconsistent with his plea insofar as it affected the specification alleging accused's theft of the radio. It accordingly sought to cure the improvidence of reducing that offense to wrongful appropriation.

At the outset, my brothers contend that accused's statement is not inconsistent with his plea of guilty of stealing the radio, camera, and car coat. I am simply unable to reach that conclusion. The convening authority's action spoke of Corporal Weekly's radio, Corporal Bourland's camera, and Sergeant Ereth's car coat. Accused's statement is in rebuttal to the comments relating to these items. Initially, it relates that accused owned a car coat at the time his personal effects were searched but which had since disappeared. Surely, it is ridiculous to conclude he was so scatter-brained that he referred in his *rebuttal statement* to a coat entirely

**213**

unconnected with the case. I find it absurd to attribute any such intent to him. Accordingly, I believe we must necessarily find that he was claiming ownership of the coat alleged to have been stolen. With regard to the camera, it is equally clear that accused was disclaiming any knowledge of its presence in his effects, for he states that his original, legitimate control over it had ended with the loan to Sergeant Amos. Finally, with respect to the radio, accused specifically admits its taking, but, just as strongly, denies any intent to keep it, temporarily or permanently. In short, with respect to all the items allegedly stolen, accused has, albeit in nontechnical language, denied that he acted *animo furandi* or with intent temporarily to deprive the respective owners of their various properties. This is an indispensable requisite to proof of guilt of either larceny or wrongful appropriation. United States v Sicley, 6 USCMA 402, 20 CMR 118. Thus, it is clear to me that my brothers err when they find nothing incongruous between accused's statement and his plea.

Having concluded that accused's post-trial declaration is indeed an impeachment of his plea of guilty, it is necessary to investigate the assertion that inconsistent statements must be made during the trial proceedings in order to form a basis for holding a plea improvident. Judge Latimer's view that declarations so made cannot be considered on appeal as indicating improvidence is contrary to our holding in United States v Lemieux, 10 USCMA 10, 27 CMR 84. There, we said, at page 12:

"In its brief the Government argues that a question of improvidence may not properly be considered unless some matter inconsistent with a plea of guilty appears prior to the termination of the trial. We do not agree. In our opinion, the staff judge advocate's post-trial review may be utilized for this purpose. See United States v Hood, 8 USCMA 473, 24 CMR 283."

For my purpose, that case is dispositive of the claim that we may not con-sider the statement which this accused made in rebuttal to assertions in the convening authority's action. Moreover, it is a rule which accords with the proper administration of justice. We have held that inconsistent comments made during the course of the trial *ipso facto* require a change in the plea unless they are withdrawn by the accused upon proper explanation. United States v Epperson, 10 USCMA 582, 28 CMR 148. From the Government's standpoint, a more liberal rule may exist after the trial's end, see United States v Lemieux, supra, but the fact remains that we should not close our eyes to the possibility of a complete miscarriage of justice simply on the basis that sentence has been pronounced. This is particularly true in the case of special courts-martial wherein the accused is not entitled to representation by legally qualified counsel and his plea is not received by an officer qualified within the meaning of Code, supra, Article 26, 10 USC § 826. In short, I am of the view that post-trial statements by an accused which are inconsistent with his plea of guilty may be utilized to find his plea was improvidently entered and to require a rehearing. At the very least, they demand that the convening authority investigate the differences between the statement and plea with a view to finding whether the latter was properly made.

Finally, I am not impressed with the argument that consideration of an *ex parte* post-trial denial of guilt gives the accused an automatic right to have his sentence reduced by another court-martial in view of our decisions in United States v Jones, 10 USCMA 532, 28 CMR 98, and United States v Skelton, 10 USCMA 622, 28 CMR 188. Initially, I point out that this argument is based upon the faulty premise that every post-trial comment by an accused necessarily indicates improvidence. Our affirmance in United States v Lemieux, supra, is a ready example to the contrary. Indeed, these continual controversies over whether pleas are provident would be almost entirely eliminated if the presidents of special courts-martial and the law officers of general courts-martial would abandon their

214

rigid adherence to the formula advice concerning the meaning and effect of guilty pleas and seek to find if the accused, in truth, is actually guilty of the offenses charged and realizes the admissions inherent in his plea. That is what Congress intended to be done when it enacted Code, supra, Article 45, 10 USC § 845. Thus, House Report No. 491, 81st Congress, 1st Session, states, at pages 23 and 24:

"The provisions of this article will be supplemented by regulations issued by the President. It is contemplated that the recommendations of the Keeffe Board as to the procedure to be followed by a court martial when a plea of guilty is entered will be adopted. The proposed procedure is as follows (see Keeffe report, p. 142):

. . . . . . .

"(2) In every case the meaning and effect of a plea of guilty should be explained to the accused (by the law officer of a general court martial; by the president of a special court martial; by the summary court), such explanation to include the following:

"(a) That the plea admits the offense as charged (or in a lesser degree, if so pleaded) and makes conviction mandatory.

"(b) The sentence which may be imposed.

"(c) *That unless the accused admits doing the acts charged, a plea of guilty will not be accepted."* [Emphasis supplied.]

While the Manual for Courts-Martial, United States, 1951, purports to implement the Congressional purpose by providing advice to be used in the event of a plea of guilty, see Manual, supra, Appendix 8, page 509, I believe it fails to achieve the desired result. Accordingly, I suggest that the officers charged with that duty in courts-martial interrogate the accused upon his plea in simple, nontechnical language and determine if he understands it in fact admits the allegations involved in the specifications and that he is pleading guilty because he is in fact guilty. An extended examination of the accused along these lines insures providence upon the record and gives the lie to his later claims of impropriety. Indeed, I am informed that such an examination is standard in the United States District Courts. I need hardly add that its adoption in the armed forces will substantially eliminate any basis for Judge Latimer's fear that accused's post-trial claims will serve to gain him an unwarranted rehearing.

In sum, I am convinced that this accused's statement in rebuttal to the matter contained in the convening authority's action is totally inconsistent with his earlier plea. As the former was made in a special court-martial wherein he was not represented by qualified counsel, I would hold that a substantial showing of improvidence, unrebutted by the record or review, has been made. Accordingly, I disagree with the majority's affirmance of the case.

I would reverse the decision of the board of review concerning Charge I and its specifications and return the record of trial for reassessment of the sentence upon the remaining findings of guilty and either a rehearing upon, or dismissal of, the larceny charges.