UNITED STATES, Appellee

v

ARTHUR RICHARDSON, Airman First Class,
U. S. Air Force, Appellant

15 USCMA 400, 35 CMR 372

No. 18,367

May 21, 1965

*Major Robert S. Amery* argued the cause for Appellant, Accused. With him on the brief was *Colonel Robert O. Rollman.*

*Major William F. Rutherford* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

FERGUSON, Judge:

Arraigned and tried before a special court-martial, the accused pleaded guilty to charges of absence without leave and dishonorable failure to maintain funds on deposit to pay checks which he had made and uttered in violation, respectively, of Uniform Code of Military Justice, Articles 86 and 134, 10 USC §§ 886, 934. He was found guilty and sentenced to bad-conduct discharge, confinement at hard labor for six months, forfeiture of $46.00 per month for six months, and reduction to airman basic. Intermediate appellate authorities affirmed, and we granted Richardson's petition for review upon the assertion that his pleas of guilty to the check offenses were improvidently entered.

The charges in question allege the nonpayment on presentation of two checks. Accused, as noted, pleaded guilty upon his arraignment to the two counts involved and persisted in that plea, following a *pro forma* explanation of its meaning and effect by the president of the court. No further inquiry into his understanding of his factual guilt was made, nor were the elements of his alleged crimes made known to him by the president. As is the custom in the Air Force, however, the prosecutor elected to present a *prima facie* case.

The evidence which the Government adduced shows the following. On April 27, 1964, accused drew a check on his account at the Commercial Bank, Thomasville, Georgia, in the amount of $50.00, and presented it to The Bay National Bank and Trust Company, Panama City, Florida. In return, he received $50.00 in cash. The check was forwarded for payment on April 28, 1964, and returned by the Commercial Bank on account of insufficient funds.

On May 2, 1964, accused once more drew a check in the amount of $50.00 on the Commercial Bank and cashed it at a branch of The Bay National Bank and Trust Company, located to his duty station. Again, he received $50.00 in cash. On May 4, 1964, the check was forwarded to Commercial Bank for payment. It also was dishonored because of insufficient funds.

In mitigation and extenuation, it was declared accused, as a result of a recent marriage, construction of a home, and purchase of a necessary automobile, had suffered considerable financial difficulties. His house payments alone totaled $178.60 per month. Finally, his "problems began to mount up and . . . things got just too much for him." As a result, he absented himself without leave on May 19, 1964, and remained so absent until June 22, 1964. Nothing was said of the circumstances surrounding the bad check charges, other than the accused realized his conduct "was wrong."

Following the trial, a clemency interview was conducted with the accused by an Air Force judge advocate who had no previous connection with the case. Questioned concerning any explanation which he might have for his offenses, the report of the interview summarizes Richardson's reply as follows:

"The bad checks of which he has been convicted of writing resulted from a gambling situation in which he was attempting to add to his financial resources. He had received checks from others with whom he was gambling which he had deposited and which subsequently bounced. When he drew checks on his account, assuming that the other checks had cleared, the bad checks for which he was tried, resulted."

In his post-trial review, the staff judge advocate to the supervisory authority seriously questioned the sufficiency of the evidence to establish accused's guilt on the basis of our

**401**

decision in United States v Groom, 12 USCMA 11, 30 CMR 11, but properly noted accused's plea of guilty made up any deficiencies in the Government's case and that there was nothing in the record proper to suggest its improvidence. See United States v Thompson, 13 USCMA 395, 32 CMR 395; United States v Hood, 9 USCMA 558, 26 CMR 338; and United States v Lucas, 1 USCMA 19, 1 CMR 19. Thereafter, however, he called the attention of the supervisory authority to accused's post-trial statement set out above and opined that, had such information been made known to the court-martial, "improvidence of plea would have resulted." However, as it was made following the trial, he expressed the view it should be treated in the same manner as "statements made by an accused *before* the trial." (Emphasis supplied.) He concluded accused's "naked assertion . . . that he thought checks deposited in his account left him with sufficient funds to cover the checks in question" was not enough to require examination of the plea, as the entire proceedings, including that which transpired at the trial, did not "so convincingly betray . . . improvidence that refusal to consider the matter would result in a miscarriage of justice." Accordingly, he recommended approval of the sentence, and that action was taken by the supervisory authority.

Under the circumstances here presented, we disagree with the staff judge advocate. In United States v Lemieux, 10 USCMA 10, 27 CMR 84, when faced with a contention accused's post-trial revelations to the staff judge advocate were inconsistent with his plea, we affirmed, but only on the basis that we found no conflict in the statement and the plea. In so acting, we expressly declared, at page 12:

"Had the facts which the accused disclosed to the staff judge advocate . . . [been inconsistent with his plea], we would have no hesitancy in holding accused's guilty plea to be improvident. . . .

"In its brief the Government argues that a question of improvidence may not properly be considered unless some matter inconsistent with a plea of guilty appears prior to the termination of the trial. We do not agree. In our opinion, the staff judge advocate's post-trial review may be utilized for this purpose. See United States v Hood, 8 USCMA 473, 24 CMR 283."

And in United States v Brown, 11 USCMA 207, 29 CMR 23, a majority of the Court in separate opinions, adhered to our statement in *Lemieux*, supra. There, I declared, at page 214:

". . . [P]ost-trial statements by an accused which are inconsistent with his plea of guilty may be utilized to find his plea was improvidently entered and to require a rehearing. At the very least, they demand that the convening authority investigate the differences between the statement and plea with a view to finding whether the latter was properly made."

See also United States v Henn, 13 USCMA 124, 32 CMR 124, and United States v Williams, 15 USCMA 65, 35 CMR 37.

Unlike the reviewer below, we find a great deal of difference between the effect of *pretrial* statements inconsistent with a *later* guilty plea and *post-trial* statements conflicting with an *earlier* plea. In the former instance, the accused may have maintained his innocence only until he saw, from the weight of the Government's case, that his pretense was useless, or until his consciousness of guilt overwhelmed him. Cf. United States v Hinton, 8 USCMA 39, 23 CMR 263; United States v Thompson, supra. Indeed, Code, supra, Article 45, 10 USC § 845, refers only to the situation in which an accused *"after a plea of guilty* sets up matter inconsistent with the plea." (Emphasis supplied.)

In the latter instance, we are confronted with a solemnly entered plea, on the one hand, and a subsequent statement of the accused which indicates, despite his adherence thereto at the trial, that he did not understand the legal significance of his acts or, to put it more plainly, that his conduct, if his

relation thereof be taken as true, did not amount in law to that to which he pleaded. It was these *post hoc* situations to which the Congress expressly addressed its attention in Code, *supra*, Article 45, and which it sought to eliminate by providing for the setting aside of pleas when inconsistent matter was *thereafter* raised by the accused. House Report No. 491, 81st Congress, 1st Session, page 23; Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, page 1054. Thus, improvidence of a plea is normally put in issue only by post-plea declarations of innocence and, in the ordinary situation, accused's pre-plea protestations of innocence have little bearing on the question.

Here, we are faced with a post-plea, and, indeed, post-trial statement by the accused. And, as the staff ■■■■■■ legal officer properly noted, ■■■■■■ it is totally inconsistent with the guilty plea. If accused, as he declared, honestly believed the checks which he wrote would be paid on presentment because of the other instruments which he had deposited in his account, and which he believed to have been cleared by the drawee banks, then he could not have been guilty of dishonorable failure to maintain sufficient funds on deposit to meet them on presentment. United States v Downard, 6 USCMA 538, 20 CMR 254; United States v Lightfoot, 7 USCMA 686, 23 CMR 150; United States v Brand, 10 USCMA 437, 28 CMR 3; United States v Groom, *supra*; United States v Henn, *supra*; cf. United States v Callaghan, 14 USCMA 231, 34 CMR 11. As we have many times stated, the offense requires proof accused's nonfeasance was characterized by deceit, evasion, false promises or other distinctly culpable circumstances, indicating a grossly indifferent attitude toward one's just obligations. United States v Groom, *supra*. An honest belief that the checks involved will be paid on presentation necessarily eliminates this essential ingredient. United States v Brand, *supra*; United States v Downard, *supra*. And we categorically reject the thesis of the board of review that accused had no right honestly to rely on checks which

were the proceeds of a gambling game. Our cases dealing with the point are premised upon public policy and a refusal "to police the conduct of persons within illegal operations." United States v Walter, 8 USCMA 50, 54, 23 CMR 274, 288; United States v Lenton, 8 USCMA 690, 25 CMR 194. The fact the instruments were made in a gambling game is irrelevant in considering whether the accused possessed the criminal mind necessary to the offenses charged.

Faced then with a post-trial statement by the accused which is totally inconsistent with his earlier plea of guilty, we cannot brush the matter aside as lightly as was done below. What the reviewer seems to have overlooked is that, contrary to his advice to the supervisory authority, a miscarriage of justice is present if the accused's statement is true, for then he is an innocent person. And in United States v Lemieux, *supra*, we pointed out that, were accused's statements after trial inconsistent with his plea, we would not hesitate to set it aside. See also United States v. Brown, *supra*, separate opinions of Chief Judge Quinn and Judge Ferguson. Indeed, we took just such action in United States v Henn, *supra*, where accused protested his innocence on appeal after pleading guilty under cicrumstances. somewhat similar to those presented in this record.

Particularly do we advert to the fact accused's plea in this case was met only with the president's barren ■■■■■ recital of a *pro forma* explanation of its meaning and effect. And, the stipulations of fact into which counsel entered were, as the reviewer noted, insufficient to make out even a *prima facie* case of guilt. Faced with such a situation, we are at a loss to understand why an immediate inquiry was not made upon receipt of accused's statement, when the facts were fresh in everyone's mind and the purported evidence of guilt ostensibly yet available. Had a proper investigation been made below, the convening authority could either have ordered a rehearing or settled the issue to the satisfaction of all appellate

**403**

bodies. When such is not done, and the matter left unresolved, we have no recourse but to conclude the circumstances require the plea to be set aside. United States v Lemieux, supra; United States v Henn, supra.

We cannot leave this matter without referring once more to the desirability of having a full inquiry made at the trial into the circumstances of the accused's plea in order to insure he understands its legal and factual significance. Recently, all Judges of this Court adopted language in United States v Brown, supra, at page 215, which set forth the suggested scope of such a judicial investigation of the plea. United States v Drake, 15 USCMA 375, 35 CMR 347. We again emphasize its use is needful and that "[a]n extended examination of the accused along these lines insures providence upon the record and gives the lie to his later claims of impropriety." United States v Brown, supra, at page 215. Here, the suggested questioning would have either resulted in a change in accused's plea or perhaps eliminated the long appellate scrutiny of his post-trial statements. The reliance on nothing more than a formula, the skimpy record, and the lack of any real attention to his declarations lead instead to reversal.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Air Force. The board may reassess the sentence on the findings of guilty of unauthorized absence or direct a rehearing on the bad check charges and the penalty.

Chief Judge QUINN and Judge KILDAY concur.