UNITED STATES, Appellee

v

ARLON R. CHANCELOR, Airman Second Class,
U. S. Air Force, Appellant

16 USCMA 297, 36 CMR 453

No. 19,299

July 22, 1966

*Lieutenant Colonel William A. Howland, Jr.*, argued the cause for Appellant, Accused. With him on the brief was *Colonel Joseph Buchta*.

*Lieutenant Colonel David B. Stevens* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis*.

### Opinion of the Court

FERGUSON, Judge:

Tried before an Air Force special court-martial, the accused pleaded guilty to charges of wrongful cohabitation, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934, and issuing a worthless check, in violation of Code, supra, Article 123a,

10 USC § 923a. In accordance with his plea, he was found guilty and sentenced to bad-conduct discharge, partial forfeitures of his pay for a stated period, and confinement at hard labor. Except as hereinafter noted, intermediate appellate authorities have finally affirmed his conviction, and the case is before us on the granted issue whether accused's plea of guilty to the bad check count was improvidently made. Our inquiry therein requires a recital of the following circumstances.

Upon accused's pleading guilty at his trial, the president's inquiry into its providence was limited to the formula advice suggested by the Manual for Courts-Martial, United States, 1951, Appendix 8a, page 509, including a statement of the maximum punishment which might be imposed. In answer, the accused indicated he understood the meaning and effect of his plea and persisted therein. By means of a stipulation of facts, the prosecution, in accordance with Air Force practice, established a *prima facie* case as to the bad check offense. Thus, it was demonstrated that accused, on November 10, 1964, drew a check on Terre Haute First National Bank in the amount of $5.00, and cashed it at Bunker Hill Air Force Base. On November 30, 1964, the check was returned unpaid through normal banking channels on account of insufficient funds. On December 1, 1964, and December 31, 1964, letters were written to accused concerning the nonpayment of the check. No reply was received; however, the check was finally paid on March 22, 1965. The case, however, was submitted to the court on the accused's plea, as well as the stipulation.

During a post-trial clemency interview, accused declared that he thought he had sufficient funds in the bank to pay the check when he drew it. The staff judge advocate conceded the comment appeared inconsistent with the guilty plea but, in light of the president's *pro forma* explanation of the plea's effect, the accused's representation by certified counsel, and failure to present any evidence *at the trial* which indicated improvidence, he concluded

**298**

the post-trial comment to be of no moment.

The board of review returned the record of trial to the supervisory authority for inquiry into the providence of the accused's plea in light of his post-trial declaration, and a new post-trial review. The inquiry involved obtaining affidavits from the accused, his counsel, his first sergeant, and the manager of the bank on which the check was drawn.

Accused maintained his statement that he believed he had sufficient funds in the bank to meet payment of the check on presentment. He indicated his financial difficulties arose from an earlier overpayment by the Air Force, which resulted in receipt of either no pay or minimal partial payments from October 1964 through March 1965. In consequence, although counseled by his first sergeant and notified by the bank of the check's return, he did not redeem it until March. Indeed, his financial difficulties were so great that he "forgot" about the check until charges were preferred against him. He specifically denied any intent to defraud, an essential element of the offense.

Accused conceded his counsel had properly advised him regarding the weight of the evidence against him; pointed out the alternatives of pleading guilty or not guilty; and that he had, on counsel's recommendation, freely chosen the former course, although he maintained his innocence. He considered counsel to have competently represented him.

Counsel confirmed accused's statement. He declared he pointed out the alternatives to the accused; that he was entitled to plead not guilty; that he, for good and sufficient reasons, recommended a guilty plea in spite of accused's protestations of innocence; and that he fully explained Chancelor's rights in the premises, emphasizing that the decision as to what plea to enter was his alone to make.

Following this inquiry, the supervisory authority, acting on the case pursuant to the recommendation of his staff judge advocate, found accused's

plea of guilty to have been fully provident and again approved the sentence.

We reverse. The accused has from the outset of these proceedings maintained his innocence, except ▄▄▄▄ ▪ upon the actual entry of his plea. That, indeed, was made with no more than the usual *pro forma* explanation of its meaning and effect. Particularly, there was no explanation of the elements of the offense to him, or that he admitted he wrote the check with intent to defraud. United States v Richardson, 15 USCMA 400, 35 CMR 372. Just as in that case, the plea was followed by a post-trial assertion that accused wrote the check in question believing in good faith that funds were present in the account to pay it upon presentment. And we long ago stated in United States v Lemieux, 10 USCMA 10, 27 CMR 84, at page 12:

> "Had the facts which the accused disclosed to the staff judge advocate . . . [been inconsistent with his plea], we would have no hesitancy in holding accused's guilty plea to be improvident."

We reiterated that injunction in United States v Richardson, supra, in setting aside a conviction on the same basis as presented here. See also separate opinion, United States v Brown, 11 USCMA 207, 29 CMR 23, at page 214; United States v Henn, 13 USCMA 124, 32 CMR 124; and United States v Williams, 15 USCMA 65, 35 CMR 37.

By our action, we do not, as the Government urges, permit the accused to plead guilty in all cases and thereafter, at his pleasure, negate its effect by simple post-trial declarations of innocence if he is ultimately displeased at the result. In neither *Richardson, Henn,* both supra, nor in this case, did such occur. Rather, the accused maintained his innocence throughout and, in the trial itself, no examination into the matter was made other than use of a rote formula which offered no real opportunity for disclosure of his motivation to confess guilt or whether he had any genuine understanding of the admissions expressed in his plea, as to the elements of the offense charged.

During the hearings on the Uniform Code of Military Justice, there was considerable concern expressed regarding the entry of guilty pleas in courts-martial, and Congress made clear the nature of the safeguards which they intended to surround the receiving of such a judicial confession. See Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, First Session, pages 1052–1057.

Thus, it provided in Code, supra, Article 45, 10 USC § 845, "If an accused . . . after a plea of guilty *sets up matter inconsistent with the plea,* . . . a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty." (Emphasis supplied.) In addition, the Congress pointed out that the "provisions of this article will be supplemented by regulations issued by the President." House Report No. 491, 81st Congress, First Session, page 23. These regulations were to set forth the procedure to be followed in all guilty plea cases and were to include the following:

> "(1) In general and special court-martial cases, the plea should be received only after the accused has had an opportunity to consult with counsel appointed for or selected by him. If the accused has refused counsel, the plea should not be received.

> "(2) In every case the meaning and effect of a plea of guilty should be explained to the accused (by the law officer of a general court-martial; by the president of a special court-martial; by the summary court), *such explanation to include the following:*

> (a) That the plea admits the offense as charged (or in a lesser degree, if so pleaded) and makes conviction mandatory.

> (b) The sentence which may be imposed.

> (c) *That unless the accused admits doing the acts charged, a plea of guilty will not be accepted.*

> "(3) The question whether the plea

will be received will be treated as an interlocutory question.

"(4) The explanation made and the accused's reply thereto should be set forth in the record of trial exactly as given." [Emphasis supplied.] [House Report, supra, pages 23–24.]

In testimony before the Armed Services Committee, Mr. Felix Larkin, Assistant General Counsel, Department of Defense, in proposing the foregoing inquiry on the record into every guilty plea, declared:

"We feel that is a procedure which will give an added amount of protection to the innumerable cases where pleas of guilty are taken, particularly among the younger men.

"*I think it would have the added advantage of settling once and for all that he is the man who did what he is charged with doing and we would be relieved thereafter of the continually [sic] complaint of accused that they did not understand what they were doing when they took their plea.*

"In addition to that, we would have the colloquy between the court and the accused at the taking of the plea and the record transcribed verbatim *and not just have a form which is printed and says the accused was informed of his rights.*" [Emphasis supplied.] [House Hearings, supra, page 1054.]

Regulations embodying the foregoing requirements were promulgated by the President, including the fact accused's plea "admits every act or omission alleged and every element of the offense charged." Manual, supra, paragraph 70*b*. Unfortunately, an attempt was also made to codify the necessary inquiry into a *pro forma* advice to the accused in the Manual's Trial Procedure Guide. See Manual, supra, Appendix 8*a*, page 509. The result has been that, as in this case, accused is not advised of the elements of the offense and his guilt in fact is not always established on the record. In consequence, after the trial is concluded, the Government is faced with appellate avowals of innocence and the boards of review and this Court with the necessity to make important and binding determinations on the basis of a veritable blizzard of conflicting affidavits. If, however, the procedure understood by the Congress to be instituted and adopted by the President in the Manual, supra, paragraph 70*b*, had been followed, there would have been a delineation of the elements of the offense and an express admission of factual guilt on the record. Thus, the accused's later, post-trial protestations of innocence would have fallen on deaf ears. Such regulations by the President —here so clearly recommended by the Congress—have the force and effect of law. United States v Smith, 13 US CMA 105, 32 CMR 105. We have heretofore suggested they be followed in addition to or in lieu of the formula advice in the Trial Procedure Guide. See separate opinion, United States v Brown, supra; United States v Williams, supra; United States v Richardson, supra. Under the facts of this case, the failure to make such inquiry— where the accused has throughout his subjection to disciplinary proceedings, except for the actual entry of his plea, insisted on his innocence—leads to reversal. We, therefore, strongly urge the services to take remedial action and insure compliance with the statutory and regulatory inquiry to be made into guilt in fact. From records before us, we note that such is done, almost without exception, in Army and Navy cases. Should the procedure be adopted throughout all the services, we believe the haunting issue of improvident pleas would become rare indeed and, as Mr. Larkin declared, "would have the added advantage of settling once and for all that he [the accused] is the man who did what he is charged with doing." House Hearings, supra, at page 1054.

That is the purpose of taking a guilty plea in a criminal trial. Neither the Government nor the accused derives any advantage in so establishing guilt unless it has in fact been brought home to the proper person. The procedure so cogently outlined in House Report No. 491, supra, "'insures providence upon the record and gives the lie to . . . later claims of impropriety.'" United States v Richardson, supra, at page 404. As it was not done here and as accused has maintained his innocence even in face

300

of full post-trial inquiry, we find error prejudicial to his rights.

The decision of the board of review is reversed, and the record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered, or the board of review may reassess the sentence on the basis of the remaining findings of guilty.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

A plea of guilty is not improvident because there is some evidence in the accused's favor. If the accused weighs that evidence against the mass available to the Government and determines that it is too meager to justify going to trial on the merits, he can properly enter a valid and unimpeachable plea of guilty. We so held in United States v Hinton, 8 USCMA 39, 41, 23 CMR 263.

". . . In a guilty plea case we cannot disregard the probability that the accused and his counsel weighed the evidence and determined that it was inadequate for an effective legal defense or to negate the existence of a specific intent. As a result, they could well have decided to disregard the evidence in favor of the possible advantage of a guilty plea. . . . The critical question, therefore, is whether the accused and his counsel were aware of the legal effect of the evidence claimed to be inconsistent with the plea of guilty." [See also United States v Watkins, 11 USCMA 611, 29 CMR 427.]

Deliberate disregard of possibly favorable evidence is different from a misunderstanding of the legal effect of an admitted fact. In the latter case, the plea of guilty may be negated by the actual facts; if it is, it must be set aside. This was the situation, for example, in United States v Welker, 8 USCMA 647, 25 CMR 151, where the accused pleaded guilty to larceny, but the conceded facts established that the offense committed by him was receiving stolen property. See also United States v Kitchen, 5 USCMA 541, 18 CMR 165. Here, the accused did not misunderstand the facts or their legal effect. He and his counsel reviewed them at length, and concluded they established the accused's guilt beyond a reasonable doubt. True, the accused indicated to his lawyer that he thought he had money in the bank to cover his checks, but he also acknowledged that his assertion was "hard to believe in light of his bank records." And, more importantly, with full knowledge of all the circumstances, he deliberately chose not to subject himself to cross-examination on his contention. Referring to the effect of a pretrial determination of this kind by the accused and his counsel, we said:

". . . [There is] a great deal of difference between the effect of *pretrial* statements inconsistent with a *later* guilty plea and *post-trial* statements conflicting with an *earlier* plea. In the former instance, the accused may have maintained his innocence only until he saw, from the weight of the Government's case, that his pretense was useless, or until his consciousness of guilt overwhelmed him." [United States v Richardson, 15 USCMA 400, 402, 35 CMR 372.]

The present attack upon the plea of guilty is nothing more than a second guess by the accused as to his chances in a trial on the merits. Even now, however, the accused does not say that if the plea of guilty was set aside, he would take the stand and open himself to cross-examination as to his belief in the sufficiency of his bank account. As I construe the record, the plea was completely voluntary and wholly consistent with the analysis of the evidence made by the accused and his counsel before trial. They determined to reject the accused's assertion of an honest purpose, for whatever advantage they believed might accrue to the accused from a plea of guilty. United States v Watkins, supra.

Actually, the board of review gave the accused a second chance to show he did not understand the effect of the evidence. It directed a further inquiry into the circumstances of the plea and the accused's contention that he thought he had money in the bank. The board of review based its remand on our

**301**

opinion in United States v Richardson, supra. In so doing, the board of review may have extended the implications of *Richardson*, since the remarks in that case about the need for further inquiry were predicated upon the inconsistency between the accused's *post-trial* assertions of fact and those in "the stipulations of fact . . . which . . . were . . . insufficient to make out even a *prima facie* case of guilt." *Id.*, page 403. Be that as it may, the inquiry was held. The accused admitted that his belief in the sufficiency of the funds in the bank was based upon personal records which were either lost or destroyed; that the bank records, which he examined with his counsel, showed he was not only overdrawn as to the checks charged, but that several others had also been dishonored; that he discussed with his counsel the statutory provision that failure to pay within five days after notice of dishonor is *prima facie* evidence of an intent to defraud at the time of the issuance of the checks; and that he accepted his counsel's advice that, by making "a clean breast of the whole matter," he might get a lighter sentence. The record demonstrates beyond all doubt that the accused's plea of guilty was wholly voluntary and fully consistent with the available evidence against him.

I have no disagreement with the procedure for the acceptance of a plea of guilty which is proposed in the principal opinion. Perhaps such procedure will reduce the number of post-trial attacks on the voluntariness of pleas of guilty. However, as desirable as the procedure may be, the failure to conform to it in this case is no excuse for invalidating what, in my opinion, is a voluntary and informed plea of guilty. I would, therefore, affirm the decision of the board of review.