UNITED STATES, Appellee

v

BURTON R. HEAGY, Private First Class, U. S. Army, Appellant

17 USCMA 492, 38 CMR 290

*Captain Douglas J. Wold* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Major Jack G. McKay.*

*Captain Balfe R. Wagner* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major John F. Webb, Jr.*

## Opinion of the Court

FERGUSON, Judge:

Tried before a general court-martial convened at Camp Radcliff, Vietnam, by the Commanding General, 1st Cavalry Division (Airmobile), the accused pleaded guilty to wrongful and unlawful secretion of mail matter, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934. He was duly found guilty and sentenced to bad-conduct discharge, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the sentence. The board of review affirmed, and we granted accused's petition for review upon the issues whether the accused's plea of guilty was provident and whether the law officer's instructions on the maximum sentence were sufficient.

I

In connection with his plea of guilty, the accused and the United States entered into a stipulation of fact regarding the circumstances surrounding the alleged offense. It establishes accused was assigned duties as battalion mail clerk on or about July 22, 1966, with the primary responsibility of processing all mail matter for his unit. His mail room was located in a so-called CONEX container, with another such structure placed adjacent thereto. On January 23, 1967, an inspection by Captain Gerard McKennen disclosed the presence of approximately 11,000 pieces of mail in the container next to the mail room. The container was secured with a combination padlock, for which only the accused had the combination. The mail consisted of all classes, but had not been tampered with in any way. The stipulation concludes with the following statement of fact:

> "Rather, it appears that the accused had fallen behind in his work and simply sought to conceal the mail he was not capable of processing. The mail was promptly removed from the CONEX container and after inventory, was returned to mail channels for delivery." [Prosecution Exhibit 1.] [Emphasis supplied.]

In mitigation and extenuation, the accused testified in amplification of the stipulation. He declared that, in addition to his duties as mail clerk, he was also appointed as public information officer and battalion draftsman, which duties he performed until the middle of October 1966.

At the time he became mail clerk, a backlog of mail matter existed, which had to be redirected to addressees who had rotated to the United States. Records of changes of address were in poor shape. In September, the mail room failed to pass an Army post-office inspection. Accused was told it was essential to pass the next inspection. With the approval of the unit postal officer, he moved the mail backlog into the other CONEX container and "as much as possible all records were brought up to date." By mistake, one sack of current mail was mixed with the redirect mail stored in the container. This stored backlog increased due to the amount of holiday mail

which had to be forwarded. Accused reported the matter to his superiors and did everything he could to obtain needed changes of address and to clear up the backlog. At all times, he "was working on this mail as I could, as the situation permitted." However, incoming and outgoing mail had a higher priority and had to be handled first.

At his request, accused was assigned an assistant who, after three weeks' training in the mail room, unfortunately was made a courier. Another assistant was utilized as a driver for the personnel section, and a third was utilized full time as a legal clerk and in the publications field.

Suffice it to say that accused's testimony indicates he worked diligently to clear up the backlog of undelivered, readdressed mail, but was frustrated in his calls for assistance of any kind. This process continued up until the discovery of the backlog by Captain McKennen. Other evidence substantiates this, and it took accused's successor, together with "a couple of medics . . . and at least one clerk from each company . . . at least a week to get the big majority of it out."

## II

The stipulated facts and evidence in mitigation and extenuation make it quite clear that accused, assigned as battalion mail clerk and given other additional, time consuming duties, was faced at the outset with the task of ridding the mail room of the backlog present when he assumed his duties. The low priority accorded redirected mail, the poor state of the change of address records, and the fact that his "assistants" actually served elsewhere, caused the backlog to grow enormously. Indeed, it is agreed that nothing more sinister occurred than the fact he "had fallen behind in his work and simply sought to conceal the mail he was not capable of processing." This he did with the unit postal officer's approval by storing the mail in an adjacent container and continuing to work on clearing up the accumulation to the best of his ability. Nevertheless, the Government argues this "concealment" mirrors accused's unlawful purpose to ob-

**494**

struct the mails, unshadowed by the stipulated fact that he was not capable of completing the herculean task facing him or the evidence that it took a large number of men a week to dispose of the accumulation, a remedy, we might add, never made available to Heagy, despite his earlier requests for assistance.

In United States v Beach, 2 USCMA 172, 7 CMR 48, this Court unanimously pointed out that obstruction of the mails "requires an unlawful purpose or intent" and "[t]he fact that accused's conduct did—in point of fact—result in a practical obstruction of mail is not enough in the absence of unlawful purpose. Morissette v United States, 342 US 246, 96 L ed 288, 72 S Ct 240." *Id.*, at page 173.

So, also, in Fliashnick v United States, 223 F 736 (CA2d Cir) (1915), the Court noted, at page 738:

". . . The mere fact of detention [of mail] is insufficient to constitute the crime as it must be accompanied by proof that the letter was detained by the defendant for some unlawful purpose."

Here, there is no mere lack of evidence to establish guilt in the stipulation, but an affirmative concession by the Government that the backlog resulted from the fact accused could not handle the work load thrust upon him. This is amplified by the testimony in mitigation and extenuation. In short, rather than to establish guilt, it appears accused's innocence of the charge is made out by the uncontested facts. In consequence, his plea was improvidently entered and, in light of the stipulation and other proof, should have been rejected by the court.

## III

The law officer's instructions on the maximum sentence were limited to a statement of the punishment imposable, the consideration to be given accused's plea, and the mechanics of voting. In view of the extensive presentation of proof regarding ac-

cused's performance as a soldier, in combat and out, his good character, and other matters, these instructions were erroneously incomplete. See United States v Wheeler, 17 USCMA 274, 38 CMR 72. In light of the action we take, however, we need not gauge their prejudicial effect.

As noted above, the Government herein stipulated to facts which are not only inconsistent with accused's guilt but also tend to establish his innocence of the offense charged. Compare United States v Beach, supra. Normally, when a plea is found to be improvidently entered, we remand for rehearing. See United States v Chancelor, 16 USCMA 297, 36 CMR 453. It appears, however, from the stipulated facts that the Government will be unable to establish any case against Heagy. Under the circumstances presented, therefore, we deem it unnecessary to require him to undergo the harassment of another trial. See United States v Sheeks, 16 USCMA 430, 37 CMR 50. Accordingly, we also order the charge dismissed.

The findings of guilty and the sentence are set aside. The decision of the board of review is reversed, and the record of trial is returned to the Judge Advocate General of the Army. The charge is ordered dismissed.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

Hiding mail to conceal one's own inability to process it expeditiously may not be as heinous as concealing it for the purpose of permanently preventing delivery to the addressee, but it is still a breach of trust, which constitutes wrongful and unlawful interference with the mails, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. See United States v Rayfield, 12 USCMA 307, 30 CMR 307. In my opinion, therefore, the evidence is not contrary to the plea of guilty. I would affirm the findings of guilty.

The instructions on the sentence are insufficient under United States v Wheeler, 17 USCMA 274, 38 CMR 72. I would, therefore, return the record of trial to the board of review for reconsideration thereof, with the observation that a punitive discharge seems inordinately severe.