UNITED STATES, Appellee

v

CARL M. BROWDER, Private First Class,
U. S. Army, Appellant

15 USCMA 466, 35 CMR 438

No. 18,421

July 2, 1965

*Captain Thomas E. Towe* argued the cause for Appellant, Accused. With him on the brief were *Colonel Joseph L. Chalk* and *Lieutenant Colonel Martin S. Drucker.*

*Captain Michael E. Phenner* argued the cause for Appellee, United States. With him on the brief were *Colonel Edwin G. Shuck* and *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

KILDAY, Judge:

Before a general court-martial convened in Okinawa, accused was arraigned on specifications charging two unauthorized absences, a larceny, a robbery, and two counts of housebreaking, in violation of Articles 86, 121, 122, and 130, Uniform Code of Military Justice, 10 USC §§ 886, 921, 922, and 930, respectively. He entered a plea of guilty, and was duly convicted. The court-martial sentenced accused to dishonorable discharge, total forfeitures, and confinement at hard labor for five years. Thereafter, the officer exercising general court-martial jurisdiction reduced the term of confinement to two years, but otherwise approved the findings and sentence, and a board of review in the office of The Judge Advocate General of the Army affirmed.

Accused then petitioned this Court for grant of review pursuant to Article 67(b)(3), Uniform Code of Military Justice, 10 USC § 867. We elected to hear arguments on two issues.

### I

The first question requires us to resolve accused's contention that his guilty plea to one of the specifications of housebreaking was improvident.

The specifications laid under Article 130 of the Code, supra, allege that accused, in conjunction with one Private Wheeler, and with the requisite criminal intent, unlawfully entered two different barracks assigned to members of Company C, 1st Battalion (Airborne), 503d Infantry. The specifications also allege that Wheeler was a member of the mentioned unit, whereas accused was assigned to Company B.

A stipulation as to the facts and circumstances of the offenses, to which accused pleaded guilty, was submitted to the law officer and later introduced in evidence prior to findings. Both accused and Wheeler were absent without leave, and the stipulation reflected that while in such status they:

". . . returned to Browder's unit to look for money. At this time they broke into and entered Buildings T–14 and T–18 of Company C, 1st Battalion, 503 Infantry. The occupants of these two buildings were away on a field problem and the buildings had been locked and secured prior to their leaving. Browder and his companion removed various items of personal property from these buildings, which they subsequently pawned. Browder and

PFC Wheeler were attempting to raise $600.00 in order that they might purchase passage to Japan."

During the out-of-court inquiry he made into the providency and voluntariness of accused's plea, the law officer was also made aware of a pretrial statement made by accused, in which he admitted a nighttime entry into the two barracks in question. That statement indicated that the first premises they broke into were the "barracks where Wheeler lives."

No question was raised at trial regarding the providency of accused's guilty pleas. Rather, for the first time before the board of review, and again before this Court, accused contended that:

"The guilty plea was clearly improvident and should not have been accepted as to the housebreaking of building number T–14 (Specification 1 to Charge IV) because this building was Private Wheeler's own barracks and the appellant was obviously invited to enter by Private Wheeler."

Briefly, the thrust of the defense position is that a trespassory entry of the building of another is necessary to make out the offense of housebreaking. See United States v Williams, 4 USCMA 241, 15 CMR 241; United States v Love, 4 USCMA 260, 15 CMR 260; United States v Crunk, 4 USCMA 290, 15 CMR 290. Thus, the argument proceeds, adverting to other military and civilian authorities, Wheeler could not be guilty of the requisite unlawful intrusion into his own billet, even though it was shared by others and regardless of the criminal intent he may have harbored. And if Wheeler was authorized to enter his barracks, it is submitted, so too was the accused, who, the defense asserts, was obviously invited by Wheeler to enter. See, generally, in addition to the authorities previously cited, 2 Wharton, Criminal Law and Procedure, § 430; Clark and Marshall, A Treatise on the Law of Crimes, 6th ed, § 13.03, pages 884–85; 12 CJS, Burglary, § 12, at page 677; Clarke v Commonwealth, 25 Gratt 908, 66 Va 908 (1874); State v Mish, 36 Mont 168, 92 Pac 459 (1907); Davis

v Commonwealth, 132 Va 521, 110 SE 356 (1922); State v Hendrickson, 130 SW2d 503 (Mo) (1939); Jones v State, 155 Tex Crim 481, 236 SW2d 805 (1951); Holderfield v State, 215 Miss 564, 61 So 2d 385 (1952); United States v Spears, 11 BR–JC 147; United States v Doskocil, 2 CMR 802; United States v Cox, 14 CMR 706; United States v Triado-Estien, 22 CMR 406.

The foregoing facts were before the law officer, and it is asserted they are inconsistent with the accused's guilty plea to the housebreaking of his companion's barracks. Thus, appellate defense counsel contend his plea was improvident as to the specification in question, and should not have been accepted by the law officer. Article 45(a), Uniform Code of Military Justice, 10 USC § 845; paragraph 70b, Manual for Courts-Martial, United States, 1951.

The Government, in reply, denies the evidence of record supports the conclusion that accused entered Wheeler's barracks at the latter's invitation, and invites attention to the tacit concession in appellate defense counsel's brief that the existence of such an invitation is based on "implication." A bare implication, it is asserted, does not constitute a "substantial showing" that the guilty plea was actually improvident, thus requiring it to be invalidated, for it does not negative guilt. See United States v Thompson, 13 USCMA 395, 32 CMR 395; United States v Watkins, 11 USCMA 611, 29 CMR 427; United States v Hinton, 8 USCMA 39, 23 CMR 263; United States v Wright, 6 USCMA 186, 19 CMR 312; cf. United States v Fernengel, 11 USCMA 535, 29 CMR 351; United States v Welker, 8 USCMA 647, 25 CMR 151; United States v Hamill, 8 USCMA 464, 24 CMR 274.

Under the facts of the case at bar, we need not determine the merits of the respective arguments on this phase of the issue. Assuming, for the sake of argument, that the facts put before the law officer showed that accused entered the barracks in question at Wheeler's invitation, it is clear that accused thereby could acquire no standing better than that available to his

"host." Thus, if Wheeler's entry into the building was not lawful, neither was accused's. The latter's rights under such circumstances are necessarily dependent on those of his companion and, under the posture of this record, we conclude even Wheeler's entry was unlawful in the context of Article 130 of the Code, supra.

This Court's opinion in United States v Williams, supra, provides helpful guidelines in assessing the legality of the original penetration or entry, which is an element of housebreaking. There, in considering "the question of authority, of permission, of invitation—call it what we may" to enter a semiprivate building or structure, such as a barracks, we indicated that the answer would:

". . . depend on a variety of circumstances, only some of which will be mentioned, and no one of which will necessarily control, or even maintain relevance, in all cases: (a) the nature and function of the building involved; (b) the character, status and duties of the entrant, and even at times his identity; (c) the conditions of the entry, including time, method, ostensible purpose, and numerous other factors of frequent relevance but generally insusceptible of advance articulation; (d) the presence or absence of a directive of whatever nature seeking to limit or regulate free ingress; (e) the presence or absence of an explicit invitation to the visitor; (f) the invitational authority of any purported host; (g) the presence or absence of a prior course of dealing, if any, by the entrant with the structure or its inmates, and its nature—and so on." [United States v Williams, supra, at page 247.]

As the Government points out, the facts reflect that Wheeler and accused were absent without authority at the time they returned in the night and, by force, broke into Wheeler's barracks. The other occupants of the building were away with their unit on a field problem, and for that reason the barracks had been locked and secured prior to their departure. When that situation is weighed against the circumstances to which reference was made in the Williams case—particularly the quoted factors denominated (b), (a), (d) and (c)—it is clear the entry of Wheeler's billet was unauthorized and unlawful.

The nature of his barracks—a semiprivate building, at best, even under ordinary circumstances—and Wheeler's status are closely related. He had no direct and personal interest in his barracks, and his rights therein depended on his membership in the unit to which the building was assigned. But Wheeler was absent without leave from his unit. Indeed, his unit—with which his duty would require him to be—was away, engaged on a field problem. Thus Wheeler's status and duties are inconsistent with authority on his part to enter.

In light of the fact that the unit occupying the building had left the area and was in the field, and because of the very nature of a barracks where numerous men are housed while present on a post, and their personal effects kept, the building had been locked and secured in order to restrict access to the same. This is a safeguard practice those who are familiar with military life are aware is both desirable and commonplace under such circumstances. Indeed, in situations of this sort, guards are sometimes left on billets to prevent the intrusions the safeguard is calculated to eliminate. Patently, Wheeler did not receive permission to enter from anyone with authority to grant such and lift the restriction. Accordingly, the nature and function of the barracks and the means in effect to restrict ingress also augur against Wheeler's right to entry. In this connection, it should be noted that under the general civilian rule an employee may be guilty of unlawful entry of a building in which he works if, at the time and place of entry, he is not authorized to do so. See 13 Am Jur 2d, Burglary, § 9; Hawkins v Commonwealth, 284 Ky 33, 143 SW2d 853 (1940); State v Corcoran, 82 Wash 44, 143 Pac 453 (1914); State v Howard, 64 SC 344,

42 SE 173 (1902). See also United States v Toland, 19 CMR 570; United States v Arnold, 33 BR 69.

Finally, the conditions of the entry, the time, method, and purpose, are inconsistent with the conclusion that Wheeler was entitled to enter. In order to effect their entry, it was necessary for Wheeler and accused literally to physically break into the barracks. In this connection, it is further significant that they did so under cover of darkness and through a rear door. And it is noteworthy that their purpose was to steal property of the various inhabitants in order to raise money to finance their activity during their continued unauthorized absence.

The record before the law officer, therefore, was not at all inconsistent with accused's guilty plea to housebreaking of Wheeler's barracks. Rather, it reflected that Wheeler himself was an unauthorized intruder. United States v Williams, United States v Love, and United States v Crunk, all supra. Since the accused's assignment of error must stand or fall on a purported invitation by his "host," and since Wheeler was himself without authority to enter, or, necessarily, to grant others permission to do so, we must, perforce, rule adversely to accused on this issue.

We hold that accused's guilty plea to this offense was not improvident, and the law officer did not err in accepting the same.

## II

The second issue upon which we granted review deals with evidence of alleged misconduct which was not made the basis of charges against accused.

The stipulation of facts, from which we quoted earlier herein, also reflects the following circumstances as to accused's first unauthorized absence:

"On 1 April 1964, PFC Browder absented himself from his unit, Company B, 1st Battalion, 503d Infantry, and remained absent without leave until 16 April 1964. Browder and a friend, PFC Wheeler, rented a house in the Naha Port Area and lived there until 11 April 1964, with two female companions. On 11 April 1964 Browder met his girlfriend, Fumiko Murakami, whom he had known since January 1964, and he and his companion moved into her house at 38-banchi, Aza-Moromizato, Koza City, where they resided until apprehended by agents of the CID at that address about 1200 hours, 16 April 1964."

Additionally, during the hearing on sentence, accused testified that the female mentioned in the stipulation was his girlfriend, and that she was pregnant. The defense contends that those matters show accused had committed wrongful cohabitation, which was uncharged misconduct, and points out that the law officer failed to give any limiting instruction with reference thereto.

In view of accused's pleas of guilty, which we have held were not improvidently entered, it is apparent that this alleged error could have no impact whatever on the findings. Appellate defense counsel, however, argue that accused was prejudiced by the law officer's failure to instruct the court-martial that it could not consider the uncharged wrongful cohabitation in assessing a sentence.

The stipulation of facts sets forth the general circumstances pertinent to accused's absence, and throws some light on his motive and intent as to the other offenses. As the Government points out, in doing so it makes only incidental reference to those actions by accused now characterized as indicating wrongdoing. It was in accused's testimony, during the presentence hearing, that specific evidence was adduced he had become involved in the offenses because his girlfriend was pregnant and he wanted to get her to Japan. Thus, appellate Government counsel point out that it was the defense that introduced the evidence in question, not the prosecution, and further invite attention to the fact that trial counsel, during his argument on sentence, made no refer-

470

ence whatever to such evidence or to any uncharged misconduct.

In addition to the fact that the defense was responsible for eliciting the matter, apparently as an extenuating explanation for the crimes to which accused pleaded guilty, the Government also argues that the items in the stipulation are too vague and obscure to show unlawful cohabitation, which requires evidence that the parties lived together as husband and wife. See United States v Leach, 7 USCMA 388, 22 CMR 178; United States v Melville, 8 USCMA 597, 25 CMR 101.

Finally, it is settled that omission to give a limiting instruction, as to evidence of other misconduct not charged, is not reversible error in the absence of any fair risk of prejudice to the accused. See United States v Lewis, 14 USCMA 79, 33 CMR 291; United States v Conrad, 14 USCMA 344, 34 CMR 124. Here, as we have previously noted, accused pleaded guilty, so the omission of limiting advice could affect only the sentence.

The defense apparently did not perceive any danger that the matter would operate to accused's prejudice on sentence, as no limiting instruction was requested at trial. And considering the posture of this entire record, that analysis is consistent with the conclusion we reach. The crimes to which accused pleaded guilty were serious and aggravated, as well as numerous. In addition to the two unauthorized absences, the accused admitted a vicious robbery committed by lying in wait and which resulted in the victim's hospitalization for severe injuries. He also broke into two separate barracks, stealing property of the absent soldiers in the course of these housebreakings. Finally, accused judicially confessed to the larceny of four very valuable rings from a jewelry store in Okinawa. The bare disorder of unlawful cohabitation pales into relative insignificance alongside the totality of serious and aggravated crimes to which accused pleaded guilty. Indeed, the chance that accused stands sentenced to heavier punishment, because the court-martial considered uncharged wrongful cohabitation in assessing a penalty, is minuscule. The law officer, in instructing on maximum sentence, advised the court members that accused was subject to confinement at hard labor for twenty-one years and accessory penalties.[1] The period of confinement assessed by the court-martial was five years, and the general court-martial authority further reduced it to two years. See United States v Subia, 12 USCMA 23, 30 CMR 23; United States v Marymont, 11 USCMA 745, 753, 29 CMR 561; United States v Horowitz, 10 USCMA 120, 27 CMR 194.

In view of the foregoing, we must reject the defense position on this issue. We hold accused was not prejudiced by the law officer's omission to instruct that uncharged misconduct could not be considered in imposing sentence.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.

---

[1] The law officer, apparently out of an abundance of caution but, we think, mistakenly, ruled that the two housebreakings were multiplicious for sentence purposes.