## UNITED STATES

v.

**Staff Sergeant James C. CAYLOR, FR252–90–6548, United States Air Force.**

**ACM 30112.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 11 July 1992.

Decided 16 Aug. 1994.

Appellate Counsel for Appellant: Colonel Francis T. Lacey (argued), Colonel Terry J. Woodhouse, and Lieutenant Colonel G. Michael Lennon.

1. Violations of Articles 80, 121, 123, 130, 109, 134, and 81, UCMJ, 10 U.S.C. §§ 880, 921, 923, 930, 909, 934, and 881 (1988). The military judge sentenced him to a dishonorable discharge, confinement for 25 years, forfeiture of all pay and allowances, and reduction to E–1. Although the plea agreement capped the maximum confinement at 20 years, the convening authority, in

Appellate Counsel for the United States: Captain Jane M.E. Peterson (argued), Colonel Jeffery T. Infelise, Colonel Thomas E. Schlegel, and Captain Timothy G. Buxton.

Before SNYDER, RAICHLE, and YOUNG, Appellate Military Judges.

## OPINION OF THE COURT

SNYDER, Senior Judge:

Staff Sergeant Caylor, consistent with his pleas of guilty, was convicted by general court-martial of attempted arson, larceny, uttering a forged check, housebreaking, willful destruction of private property, transporting stolen property in interstate commerce, and conspiracy to commit aggravated arson.[1] He has submitted four assignments of error and three supplemental assignments of error,[2] none of which we find persuasive.

In his initial assignment of error, appellant avers he was denied a fair trial as the result of prosecutorial misconduct, and that there is sufficient evidence thereof to justify a limited hearing to inquire into this matter. *See United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). As implied by the relief requested, appellant's appellate counsel concedes the record of trial does not support his averment. However, appellant's affidavit, submitted pursuant to *United States v. Grostefon*, 12 M.J. 431, 432 (C.M.A.1982), claims he was coerced, by a threat to prosecute his wife, brother, and a friend, into entering into a plea agreement and pleading guilty. Appellate defense counsel argues this affidavit constitutes sufficient evidence to justify a *DuBay* hearing.

## I. APPLICABILITY OF WAIVER DOCTRINE

Before hearing oral argument on this issue, we specified the following issue, on

an act of clemency, reduced it to 15 years, but otherwise approved the sentence as adjudged.

2. The supplemental assignments of error are the result of submissions from appellant pursuant to *United States v. Grostefon*, 12 M.J. 431, 432 (C.M.A.1982) and, with two exceptions, restate the original assignments of error.

which we requested argument from appellate defense and government counsel:

> WHETHER, IN LIGHT OF THE REQUIREMENTS OF UNITED STATES V. CARE,[3] UNITED STATES V. GREEN,[4] AND UNITED STATES V. KING[5] HAVING BEEN COMPLIED WITH IN FULL AT TRIAL, THE CLAIMED ISSUE OF A COERCED GUILTY PLEA AND PRETRIAL AGREEMENT SHOULD BE DEEMED WAIVED ON APPEAL.

After hearing argument and considering the applicable precedents, we answer the specified issue in the negative.

 It is now all too apparent that the procedures prescribed by *Care, Green,* and *King* have not eliminated post-trial attacks on guilty pleas and pretrial plea agreements.[6] One reason for this state of affairs is, although a guilty plea waives several rights to which an accused or appellant is entitled, a plea of guilty may yet be attacked as involuntary or coerced. If coercion is proved, the plea must be set aside. *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); *Marchibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962); *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); *United States v. Wille,* 9 U.S.C.M.A. 623, 26 C.M.R. 403 (1958). Even a complete and thorough record, as in the case *sub judice,* though a formidable barrier, "is not an insurmountable barrier" to a post-trial attack on the voluntariness of a plea or plea agreement. *See Blackledge,* 431 U.S. at 74, 97 S.Ct. at 1629, 52 L.Ed.2d at 147. Therefore, we will address the merits of appellant's assignment of error. Our answering the specified issue in the negative, however, does not mean appellant shoulders a light burden. In light of a fully developed record, appellant's burden is considerable. *Id.*

## II. COERCED GUILTY PLEA

As mentioned above, appellant's affidavit alleges that the assistant trial counsel, Lieutenant Colonel (LtCol) O, told his civilian and military defense counsel that "if I did not plead guilty to the stipulation of fact [sic] as LTC [O] had written it that my wife, my brother, and Daryl Barbo would be arrested as accessories after the fact by the Bossier Parish Sheriff's Department."

During oral argument, appellate defense counsel argued that this assertion by appellant provides sufficient facts to justify a *DuBay* hearing. In the alternative, he argues that, even if the Government's position is correct, then the parties below entered into a *sub rosa* agreement in addition to the plea agreement, and, because *sub rosa* agreements are contrary to applicable regulations,[7] the findings and sentence should be set aside.[8] Appellee argued the record speaks for itself, and it is silent with regards to appellant's claim. Further, even if appellant's claim is accepted, it is not improper for the Government to extract a guilty plea in

3. 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

4. 1 M.J. 453 (C.M.A.1976).

5. 3 M.J. 458 (C.M.A.1977).

6. During the pre-*Care* days of military practice, the late Judge Ferguson passionately maintained that a thorough examination of an accused who pleads guilty and a record thereof would insure "providence upon the record and [give] the lie to [an appellant's] later claims of impropriety." *United States v. Brown,* 11 U.S.C.M.A. 207, 214–15, 29 C.M.R. 23, 31 (1960) (Ferguson, J., dissenting). In *United States v. Chancelor,* 16 U.S.C.M.A. 297, 300, 36 C.M.R. 453, 456 (1966), he predicted steadfastly that in the face of a clear record "the accused's later post-trial protestations of innocence would have fallen on deaf ears." However, in guilty plea cases involving plea agreements, even adding the requirements of *Green* and *King* to the *Care* procedures did not achieve this goal. *See United States v. Joseph,* 11 M.J. 333 (C.M.A.1981).

7. *See* Air Force Regulation 111–1, *Military Justice Guide,* ¶ 7–3(a) (1989).

8. Appellate defense counsel even averred at oral argument that, if granted a rehearing, appellant is willing to give up the benefit of the plea agreement and take the risk of exposing himself to the statutory maximum punishment, including freeing the convening authority from the restraint of his current punishment setting the maximum for any subsequent trial. Our disposition of the case precludes our having to address this issue, but counsel offered little authority to indicate such a waiver is viable.

exchange for leniency towards a third party, as long as the Government has a *prima facie* case against the third party, which was the case with appellant's wife and friends. In light of our resolving the factual issue adversely to appellant, we need not address appellee's alternative argument.

We caused affidavits to be obtained from LtCol O and the trial counsel, Captain (Capt) B.[9] LtCol O and Capt B directly dispute appellant and categorically deny appellant's allegation. They state that, after the Article 32 investigation,[10] which reflected the compelling strength of the Government's case, there really was no issue as to whether appellant would plead guilty. The only issues deemed negotiable were to how many of the several charges appellant would plead guilty and at how many years the maximum confinement would be capped.

After considering all of the affidavits, we are convinced of the truth and accuracy of LtCol O's and Capt B's affidavits, wherein they state that at no time was any member of appellant's family mentioned or threatened with prosecution. Appellant's affidavit states the alleged threat was made to his civilian and military defense counsel. His military counsel, Capt K–B, however, makes no mention in her affidavit [11] of being personally aware of a threat. The most Capt K–B states is that appellant "indicated he was under the belief" that if he did not plead guilty his wife would be prosecuted, and that "it is my understanding" that the subject of prosecuting appellant's wife was brought up during negotiations. Capt K–B cautions that she was not present during these negotiations. Further, we note that she does not attribute appellant's "impression" to any particular source or shed light on who raised the prospect of action against Mrs. Caylor.

Appellant's affidavit is illuminating on this issue. Throughout it he frequently refers to being threatened and forced to agree to the stipulation of fact and that he was pressured to agree to the stipulation of fact. We believe appellant's allegations reduce themselves to personal discontent with his lack of bargaining power and the unpleasantness of the limited options which were available to him. He may possibly have feared that his crime wave resulted in his wife being engulfed as an accessory after the fact. Nonetheless, being required to select from an array of unfavorable choices does not constitute a threat.

There also is the matter of the record of trial. The military judge was quite thorough in explaining the elements of the offenses to which appellant pleaded guilty and assuring herself that appellant's plea of guilty and his *offering and entering into* the plea trial agreement were his own voluntary decisions. Appellant specifically was asked if anyone had threatened or coerced him into pleading guilty or entering into the plea agreement, and he answered in the negative. When asked if the written pretrial agreement included the entire agreement between him and the convening authority, both he and his defense counsel answered in the affirmative, and they denied the existence of any *sub rosa* agreements as well. The military judge could do no more in the face of appellant and *both of his defense counsel* assuring her all was in order. *United States v. Cook*, 11 M.J. 257 (C.M.A.1981); *United States v. Myles*, 7 M.J. 132 (C.M.A.1979). Moreover, although Capt K–B was not present at all of the plea negotiations, it is not unreasonable, in light of her knowledge of appellant's "impression," to expect her to have spoken up in open court if she had any knowledge of improper acts or tactics by the prosecution.

*Care, Green,* and *King* were promulgated for the specific purpose of insuring an accused's actions in conceding very substantive rights truly are informed and voluntary. Appellant and his counsel assured the military judge all pleas and waivers were informed and voluntary. In the face of an accurate

---

9. LtCol O and Captain B are reserve judge advocates who were serving active duty tours during appellant's trial.

10. *See* Article 32, UCMJ, 10 U.S.C. § 832 (1988); Rule For Courts–Martial (R.C.M.) 405.

11. Capt K–B's affidavit was submitted and allowed via motion of appellate defense counsel as evidence corroborative of appellant's claim and not in response to any allegation of ineffective representation by Capt K–B.

record of the proceedings, "solemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629, 52 L.Ed.2d at 147. We find that appellant's post-trial assertions to the contrary do not rebut the record of trial. *See United States v. Muller*, 21 M.J. 205, 207 (C.M.A.1986); *United States v. Gandy*, 47 C.M.R. 130 (A.F.C.M.R.1973). While the threshold for a *DuBay* hearing on certain issues may be low, it must exceed bare allegation. *See United States v. Johnston*, 39 M.J. 242, 244 (C.M.A.1994).

### III. PROVIDENCE OF PLEA

■ Appellant also asserts that his guilty plea to the housebreaking charge, Charge IV and its specification, is improvident because it lacks a factual basis. The specific factual deficiency averred is the unlawfulness of appellant's entry. He avers his entry was lawful, therefore, his admitted intent to steal notwithstanding, his plea to housebreaking is improvident. We disagree. Appellant does not dispute his admissions to the military judge during the *Care* inquiry or the contents of the stipulation of fact. We briefly review them.

Appellant and his confederate, GW, were employees of a company which owns a chain of liquor stores, including the one which was the target of the offense. Being very knowledgeable of the store's physical layout and its business hours, appellant and GW planned to enter it just prior to its closing. Shortly after 2300 hours, as planned, GW entered the store and began purchasing a six-pack of beer. While he engaged the clerks in conversation, appellant entered the store unobserved and quickly walked the 15–20 feet to the restroom. After completing his purchase, GW went to the restroom and helped appellant lift himself into the ceiling area of the store. GW departed, but appellant remained until after midnight, when the employees left and secured the store for the evening. According to the plan, GW telephoned the store. The ringing phone was appellant's signal that it was clear for him to lower himself from the ceiling.

After lowering himself from the ceiling back into the restroom, he entered the main area of the store and proceeded to steal a safe and its contents, as well as breaking a significant amount of unopened liquor bottles, and starting a fire, the latter two offenses being intended to direct suspicion towards neighborhood juveniles.

Housebreaking, as defined in Article 130, UCMJ, 10 U.S.C. § 930 (1988), is significantly broader than common law burglary. All that need be proven is an unlawful entry of any building or structure with an intent to commit any offense therein. *See* MANUAL FOR COURTS-MARTIAL (MCM), Part IV, ¶ 56c(1) (1984).

Relying on *United States v. Doskocil*, 2 C.M.R. 802 (A.F.B.R.1952), appellant argues that, because he entered the store when it was open to the public, his entry was lawful. Appellee, however, correctly points to *Doskocil's* caution that one who enters a store during a time it is not open to the public commits a trespass and enters unlawfully. *Doskocil*, 2 C.M.R. at 804. In consonance with this principle, appellee argues that, when appellant secreted himself in the ceiling he "exceeded his right to be in the store for genuine business purposes," and when he reentered the store from the ceiling, he did so without the consent of anyone authorized to give it.

Neither appellant's nor appellee's counsel have invited our attention to any precedents directly on point with the factual posture of this case. As far as our own research can determine, no published military case has discussed the particular scenario of the instant case. However, we believe the overall parameters of Article 130, as interpreted by the cases applying it, provide workable guideposts for our resolution of this issue.

■ Both counsel cite *Doskocil* in support of their respective positions. Prior to focusing on the lawfulness of appellant's entry, we must remember that *Doskocil's* primary point is that evidence of one's criminal intent to commit an offense within the building or structure entered *does not prove the unlawfulness of the entry. See Doskocil*, 2 C.M.R. at 802. With this caution in mind, we turn to the nature of appellant's entry into the liquor store.

In one of the earlier reviews of the breadth of Article 130, the Court of Military Appeals instructed that, to determine the lawfulness or unlawfulness of an entry, one must analyze the issue of authorization, express or tacit, regardless of the nature of the building. Further, while reviewing the issue of authorization, whether the building or structure is private, semiprivate, or public, also must be considered. *United States v. Williams,* 4 U.S.C.M.A. 241, 246, 15 C.M.R. 241, 246 (1954). Of the specific, and not all-inclusive, factors the Court articulated, the ones germane to the instant case are:

> the *conditions of the entry, including time, method, ostensible purpose,* and numerous other factors of frequent relevance but generally insusceptible of advance articulation; ... [and] the presence or absence of an explicit invitation to the visitor....

*Williams,* 4 U.S.C.M.A. at 247, 15 C.M.R. at 247 (emphasis added); *accord United States v. Browder,* 15 U.S.C.M.A. 466, 35 C.M.R. 438 (1965); *United States v. Roa,* 20 M.J. 867 (A.F.C.M.R.1985).

Applying the *Williams* factors to the instant case, appellant did enter the store during the hours it was open to the public, so, *arguendo,* he did enter at the invitation of the owner. But what of the conditions of his entry and his method and ostensible purpose? It is readily apparent that whatever may have been the license of entry extended to appellant, it did not include the ceiling of the establishment or extend to secreting himself until after business hours. We cannot discern any reason to conclude that Article 130 does not apply to appellant's actions. His *modus operandus* it is not at all a novel method of committing crime. It is substantively insignificant as to what theory or description we attribute to appellant's acts. Whether we view his secreting himself in the ceiling area as an unauthorized entry into the ceiling itself, or his lowering himself back into the restroom as a second *but unauthorized entry of the store,* his entry was unlawful. *See generally Browder,* 15 U.S.C.M.A. 466, 35 C.M.R. 438; *Williams,* 4 U.S.C.M.A. at 247, 15 C.M.R. at 247; *Roa,* 20 M.J. 867.

Our conclusion is not at odds with other courts which have decided similar factual scenarios.

Construing a statute akin to Article 130, and given almost identical facts, the North Carolina Court of Appeals held that such acts voided any consent to the entry and caused the initial entry while the store was open to be unlawful. *North Carolina v. Speller,* 44 N.C.App. 59, 259 S.E.2d 784 (N.C.Ct.App. 1979); *see also North Carolina v. Boone,* 297 N.C. 652, 659 n. 3, 256 S.E.2d 683, 687 n. 3 (N.C.1979); Annotation, *Maintainability of Burglary Charge, Where Entry Into Building Is Made With Consent,* 58 A.L.R.4th 335 (1993); Annotation, *Breaking And Entering Of Inner Door Of Building As Burglary,* 43 A.L.R.3d 1147 (1993).

■ Therefore, we hold that whenever one enters a public or semi-public building or structure while it is open to the public, with intent to commit an offense therein, but then conceals oneself in an area not open to the general public, and exits the hiding place after normal business hours and enters into any area of the building, the offense of housebreaking is committed. Appellant admitted to these very acts, and they do constitute a sufficient factual basis for his pleas of guilty. We find his pleas provident.

## IV.

■ While detailing the matters appellant desired submitted pursuant to *Grostefon,*[12] appellant's counsel informed this Court that appellant was claiming ineffective assistance of counsel. Our review of appellant's affidavit, however, failed to find any claim by appellant of any specific dereliction on the part of either his civilian or military defense counsel. We find the issue is not raised.

## V.

We have considered the other assignments of error submitted by appellant and conclude they are answered sufficiently or rebutted by appellee's brief. We find them without merit.

**12.** *See United States v. Gunter,* 34 M.J. 181 (C.M.A.1992).

## VI. DECRETAL

The findings and sentence are correct in law and fact, Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1988), and, on the basis of the entire record, are hereby

AFFIRMED.

Senior Judge RAICHLE and Judge YOUNG concur.