# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

––––––––––––––––––––––

### No. ACM 24022

––––––––––––––––––––––

### UNITED STATES
*Appellee*

**v.**

### Nancy E. ZIESCHE
Senior Airman (E-4), U.S. Air Force, *Appellant*

––––––––––––––––––––––

Appeal from the United States Air Force Trial Judiciary[1]

Decided 8 October 2025

––––––––––––––––––––––

*Military Judge*: Pilar G. Wennrich.

*Sentence*: Sentence adjudged on 21 November 2023 by SpCM convened at Joint Base McGuire-Dix-Lakehurst, New Jersey. Sentence entered by military judge on 14 December 2023: 65 days confinement, reduction to E-1, and a reprimand.

*For Appellant*: Captain Samantha M. Castanien, USAF

*For Appellee*: Colonel G. Matt Osborn, USAF; Colonel Matthew Talcott, USAF; Lieutenant Colonel J. Pete Ferrell, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa Bairos, USAF; Major Regina Henenlotter, USAF; Major Kate E. Lee, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, KEARLEY, and MCCALL, *Appellate Military Judges*.

Judge KEARLEY delivered the opinion of the court, in which Chief Judge JOHNSON and Judge MCCALL joined.

––––––––––––––––––––––

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A). *See Manual for Courts-Martial*, *United States* (2024 ed.).

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

KEARLEY, Judge:

A special court-martial composed of a military judge convicted Appellant, in accordance with her pleas and pursuant to a plea agreement, of one specification of failure to obey a lawful order, in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892; one specification of failure to go to appointed place of duty and two specifications of absence from unit without authority, in violation of Article 86, UCMJ, 10 U.S.C. § 886; one specification of resisting apprehension, in violation of Article 87a, UCMJ, 10 U.S.C. § 887a; one specification of breach of restriction, in violation of Article 87b, UCMJ, 10 U.S.C. § 887b; and one specification of false official statement, in violation of Article 107, UCMJ, 10 U.S.C. § 907.[2,3]

Consistent with the plea agreement, the military judge sentenced Appellant to confinement for a total of 65 days (confinement for each specification running consecutively), reduction to the grade of E-1, and a reprimand.[4] The convening authority took no action on the findings or sentence and provided the language for the reprimand. Appellant was credited with 55 days of pretrial confinement.

Appellant raises two issues on appeal, which we have rephrased: (1) whether Appellant's plea of guilty was voluntary;[5] and (2) whether the entry

_____

[2] Unless otherwise noted, all references to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] Pursuant to the plea agreement, various other specifications to the charges addressed *supra*, and two additional charges and their specifications were withdrawn and dismissed with prejudice.

[4] Appellant's plea agreement had specific confinement limitations (minimum and maximum days of confinement) for each charge and specification, upon acceptance of her guilty plea. Those limits ranged from a minimum of 1–30 days in confinement to a maximum range of 2–70 days in confinement. The agreement indicated the periods of confinement shall run consecutively. The plea agreement also barred the military judge from adjudicating a bad conduct discharge.

[5] Appellant personally raises this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

of judgment should be modified to reflect that the convening authority withdrew and dismissed without prejudice Charge I and its specification after referral.[6]

As to issue (2), we direct modification of the entry of judgment in our decretal paragraph. As to the remaining issue, we find no error materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

# I. BACKGROUND

Appellant joined the military at the age of 30 years old. She was nearing the end of her initial four-year enlistment when her father became ill. Appellant extended her initial enlistment for 11 months in order to accept a humanitarian assignment at Joint Base McGuire-Dix-Lakehurst (JB MDL) to be closer to her father. Appellant arrived at JB MDL in April 2022 and shortly after her arrival, her father's condition worsened, and he was hospitalized. Two weeks after moving to JB MDL, Appellant's father passed away. His death was difficult for Appellant and losing him had a severe impact.

Several weeks after her father passed away, Appellant notified her unit that she was pregnant. Appellant gave birth to her second child in December 2022. Appellant took approximately six months total of convalescent and maternity leave and returned to work on 3 May 2023.

Appellant's husband lived overseas, in Germany.[7] Appellant was also raising her teenage son. Based on pregnancy and childbirth hardship, Appellant started a voluntary separation process that her commander approved on 23 May 2023 with an effective date of 15 August 2023. However, as the result of adverse actions in her record, Appellant's unit initiated involuntary separation proceedings on 12 June 2023.

From this point on, Appellant committed a series of offenses during the period she was to be out-processing from the Air Force. These offenses included failing to follow orders, failing to complete paperwork, and failing to go to appointments associated with her separation. On 7 August 2023, and in response to Appellant's misconduct to date, Appellant's commander preferred two charges for trial by court-martial against Appellant. These incidents formed the basis for her failing to go to her appointed place of duty, on divers occasions,

---

[6] On 8 October 2025, we *sua sponte* vacated our original opinion, dated 15 September 2025, in this case, as the opinion incorrectly stated that the pleas to the Specification to Charge I was withdrawn and dismissed without prejudice "after" arraignment, when the record of trial reflects that it occurred "before" arraignment.

[7] Appellant's husband is not in the U.S. Armed Forces. He provided testimony at Appellant's court-martial from his parent's house in Germany.

at the times prescribed, in violation of one specification of Article 86, UCMJ; and her failing to complete her DD Form 2807-1[8] and other forms, as it was her duty to obey, in violation of three specifications of Article 92, UCMJ.

However, after preferral of the above charges, Appellant continued on her course of misconduct. In early August 2023, she went absent without leave (AWOL) for 12 days, and when she returned to her unit, she had her child with her, and requested leave for five days, marking "CONUS" (within the continental United States) as her leave area, and specifically indicated she would be in New York. She was granted leave for five days. However, after the five days were up, Appellant did not report to duty. She remained AWOL again for 15 days. During this time, Appellant had traveled outside the continental United States (OCONUS) without authorization. Appellant eventually entered her unit's building at JB MDL, in civilian clothes, to retrieve items from her desk. Agents from the Air Force Office of Special Investigations (OSI) apprehended her.

As a result of her unauthorized absences, Appellant's commander restricted her to the limits of JB MDL. However, on the same day her restriction took effect, Appellant failed to report to her place of work, as required. After four more days, her commander placed her on deserter status and OSI agents began coordinating with law enforcement agencies to locate and apprehend Appellant. Appellant remained absent from her place of duty, without authority, until 28 September 2023.

During both AWOL periods (28 August–11 September 2023 and 12–28 September 2023), Appellant's unit notified her via text, and phoned her multiple times to inform her she was absent without leave and would be placed on deserter status if she did not report to work.

On 28 September 2023, Appellant's first sergeant notified OSI that Appellant may travel to base to pick up a laptop charger later that day. Appellant was apprehended by military police as she tried to enter the gate on JB MDL. She was in civilian clothes and had her 9-month-old child secured in an infant car seat in the back seat of her car. She physically resisted apprehension by an OSI agent by kicking the agent. She also strapped her baby to the front of her body and then strapped herself in her car to resist apprehension. Appellant's unit arranged for transportation to pick up Appellant's mother to help take care of Appellant's child. Appellant eventually voluntarily left the car. Appellant was placed in pretrial confinement, where she remained for 55 days prior to trial.

---

[8] The Department of Defense (DD) Form 2807-1 is a Report of Medical History.

An investigation later revealed that Appellant had deliberately submitted multiple requests for leave with a false address, indicating she was taking leave in the state of New York when she had actually traveled to Germany to visit her husband. She traveled outside the continental United States at least five times from October 2022 to August 2023, despite claiming she was in the continental United States. Appellant knew the process for properly filling out and submitting leave requests to include the specific requirements for taking leave overseas. These later incidents formed the basis for six additional charges and specifications.

The following charges were referred: Charge I and its Specification (failure to go to appointed place of duty at the prescribed time, on divers occasions); Charge II, Specifications 1–3 (failure to obey a lawful order); Additional Charge I, Specifications 1–4 (failure to go to appointed place of duty at prescribed locations) and Specifications 5–7 (absences without authority); Additional Charge II and its Specification (resisting apprehension); Additional Charge III and its Specification (breaking restriction); Additional Charge IV and its Specification (negligent dereliction of duty); Additional Charge V and its Specification (false official statement, on divers occasions); and Additional Charge VI and its Specification (assault upon person in the execution of military law enforcement duties). Additional Charges IV and VI, and their specifications, were withdrawn and dismissed with prejudice as part of the plea agreement.

## II. DISCUSSION

### A. Voluntariness of Plea

Appellant argues that her plea of guilty was involuntary or coerced. She claims she was under "extreme duress" when she made her plea as her main concern at the time was the safety and welfare of her children and family. She claimed the "overwhelming pressures" she faced made it "impossible for [her] to make a free and voluntary decision."

The Government argues Appellant's "'express admissions on the record' wholly contradict her newfound post-trial claims that she was under extreme duress, unable to make a free and voluntary decision and felt coerced to accept a plea deal." The Government claims that neither the Appellant's declaration, nor the record of trial, raises a substantial question as to whether her plea was voluntary. We agree.

#### 1. Additional Background

Appellant personally raised a single issue regarding the involuntariness of her guilty plea. She later moved this court to attach a declaration signed by her detailing the circumstances surrounding her guilty plea and why she felt her plea was involuntary or otherwise coerced. This court granted her motion.

Appellant later moved to attach an additional declaration signed by her to support her reply to the Government's answer to her assignments of error brief. While the Government opposed this later motion, the court granted the motion, but specifically deferred consideration of the applicability of *United States v. Jessie*, 79 M.J. 437 (C.A.A.F. 2020), and related case law to the attachment until we complete our Article 66, UCMJ, 10 U.S.C. § 866 review of Appellant's entire case. This court decided to consider the second declaration under *United States v. Jessie*, as discussed infra.

### a. Appellant's Claims of Coercion

In Appellant's first declaration, she claimed the "overwhelming pressures [she] faced made it impossible for [her] to make a free and voluntary decision." She went on to describe "severe limitations" on her "legal representation" and the "threat of extended confinement." She claims she was left with the impression that if she did not accept the plea deal offered, her trial defense counsel would no longer be able to serve as her counsel. She also felt that if she refused the plea, she would remain in confinement, "not only indefinitely, but potentially until March of 2024 or later, awaiting trial." She felt she was "placed in an impossible situation: accept a plea under pressure, or risk prolonged suffering and separation from [her] infant child and teenager without adequate legal support to mount a proper defense."

Appellant also claims that she was targeted by her leadership with paperwork and "put in a position where she could not comply with her job requirements without neglecting her child." She felt the "Air Force coerced [her] into a position where she was forced to plead guilty to protect her child" since the Air Force "forced [her] disabled mother to drive [her] car home and take care of [her infant child] when [Appellant's mother] was physically unfit to do either . . . ."

### b. Voluntariness of Plea

Prior to Appellant's court-martial, a sanity board convened to address the Appellant's mental state. The sanity board determined that she was not suffering from a mental disease or defect such that it would have caused her to be unable to appreciate the nature and quality or wrongfulness of her conduct. At the court-martial the military judge reiterated this determination by asking Appellant if she "believe[d] at the time of the charged offenses, [she] was unable to appreciate the nature and quality or wrongfulness of [her] actions." Appellant confirmed she was able to appreciate the nature and quality or wrongfulness of her actions.

During Appellant's plea inquiry, the military judge questioned her about each charge and specification and Appellant consistently indicated that she

had no legal justification or excuse for her actions and that no one and nothing forced her to violate the orders or regulations.

For example, in regard to one of the specifications for failure to obey a lawful order to complete her DD Form 2807-1, Appellant acknowledged the following:

> [Military Judge (MJ)]: . . . Could you have complied with the order?
>
> . . .
>
> [Appellant]: It was very difficult due to childcare, but I could have.

Appellant told the military judge that she prioritized her child versus going to her appointment, but then acknowledged she was not prevented from being at her appointment.

> [MJ]: . . . Did anything or anyone prevent you from going to [the appointment] at the appointed time?
>
>  . . .
>
> [Appellant]: Yes, ma'am. I prioritized my childcare appointment instead of following the order.
>
> [MJ]: But you were not physically prevented from going to [the appointment] at the appointed time.
>
> [Appellant]: Correct.
>
> [MJ]: Okay. Did you realize at the time that by not being at [the appointment] at the appointed time you would be absent without authorization?
>
> [Appellant]: Yes, Your Honor.

At another point during the plea inquiry, the district trial counsel asked the military judge to ensure that Appellant understood her circumstances did not constitute a legal justification or excuse for her unauthorized absence:

> [MJ]: Do counsel believe any further inquiry is required?
>
> [District Trial Counsel]: Your Honor . . . I just want to make sure, if possible, that it's clear [Appellant] understands . . . that any of these other circumstances that she is talking about did not constitute . . . any legal justification or excuse. . . . really crystallizing that for the record that she understands whatever circumstances you have does not constitute legal justification or excuse.

. . .

> [MJ]: Sure. [Appellant], recognizing that you had some personal hardships at this time, do you believe that your personal hardships or inability to secure childcare constituted a legal justification or excuse for your unauthorized absence?
>
> [Appellant]: No, it is not a legal justification or excuse, Your Honor.
>
> [MJ]: Okay. Do you admit and do you believe that your conduct was wrongful?
>
> [Appellant]: Yes, Your Honor.

The military judge also discussed the provision of Appellant's pretrial agreement that waived all waivable motions by asking Appellant the following:

> [MJ]: In particular, do you understand that this term of your agreement may preclude this court or any appellate court from having the opportunity to determine if you are entitled to any relief based on motions that your counsel would have made but for this provision?
>
> . . .
>
> [Appellant]: Yes, Your Honor.

The Defense originated the waiver of motions provision, and the military judge asked Appellant:

> [MJ]: . . . [Appellant], although the defense originated this term of your plea agreement, did you freely and voluntarily agree to this term of your agreement in order to receive what you believe to be a beneficial agreement?
>
> [Appellant]: Yes, Your Honor.

The military judge also addressed Appellant's pretrial punishment, to include confinement. The military judge and Appellant's trial defense counsel specifically discussed the factual basis for a motion of illegal pretrial punishment which focused on Appellant being housed with the general population in confinement. The military judge ensured Appellant understood that by agreeing to waive this motion, she was giving up an opportunity to have the military judge decide to rule that she receive additional pretrial confinement credit besides that which she would have received anyway.

**2. Law**

We review the military judge's determinations of questions of law arising during or after the plea inquiry de novo. *United States v. Inabinette*, 66 M.J.

320, 321 (C.A.A.F. 2008). As such, we review the voluntariness of a guilty plea de novo. *United States v. Rankin*, No. 202300100, 2024 CCA LEXIS 279, at *10 (N.M. Ct. Crim. App. 12 Jul. 2024) (unpub. op.) (citing *Marshall v. Lonberger*, 459 U.S. 422 (1983)).

Rule for Courts-Martial (R.C.M.) 910(c)(1)–(6) outlines the military judge's obligation to advise an accused of certain rights prior to accepting a guilty plea. Under R.C.M. 910(d), "[t]he military judge shall not accept a plea of guilty without first, by addressing the accused personally, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement under R.C.M. 705."

"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). "The voluntariness of [a] plea can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749 (citations omitted). The Government may "not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant." *Id.* at 750.

"[A] plea of guilty may yet be attacked as involuntary or coerced. If coercion is proved, the plea must be set aside." *United States v. Caylor*, 40 M.J. 786, 788 (A.F.C.M.R. 1994) (citations omitted). However, "being required to select from an array of unfavorable choices does not constitute a threat." *Id.* at 789.

"The plea-bargaining process necessarily exerts pressure on defendants to plead guilty and to abandon a series of fundamental rights, but we have repeatedly held that the [G]overnment may encourage a guilty plea by offering substantial benefits in return for the plea." *United States v. Mezzanatto*, 513 U.S. 196, 209–10 (1995) (internal quotations marks and citation omitted).

While "the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Id.*

This court is not obligated to consider inconsistent post-trial assertions by an appellant that contradicts his or her on-the-record assurances. *See United States v. Muller*, 21 M.J. 205, 207 (C.M.A. 1986).

Post-trial claims can be insufficient to overcome "on-the-record assurances of voluntariness," especially when an appellant makes consistent assurances to the military judge confirming that his or her plea of guilty and submission of an offer for plea agreement were voluntary. *United States v. Hancock*, No. 201000400, 2011 CCA LEXIS 114, at *16–17 (N.M. Ct. Crim. App. 28 Jun. 2011) (unpub. op.); *see also United States v. Inong*, 57 M.J. 501, 503 n.5 (N.M. Ct. Crim. App. 2002), *aff'd* 58 M.J. 460 (C.A.A.F. 2003) (applying waiver to

issue of pretrial punishment but noting that an accused's plea was provident after he made on the record assurances of voluntariness despite claiming he believed he could only get out of solitary confinement by signing a pretrial agreement).

"Every accused who signs a pretrial agreement does so for some future benefit, most often for relief from post-trial confinement." *Hancock*, unpub. op at *18.

This court may consider matters outside the record to resolve issues reasonably raised by materials in the record, but not fully resolvable by those materials. *United States v. Jessie*, 79 M.J. 437, 445 (C.A.A.F. 2020).

### 3. Analysis

Considering all relevant circumstances surrounding Appellant's guilty plea, we do not find it involuntary. *Brady*, 397 U.S. at 749.

Before we address Appellant's underlying claim, this court determined it could consider Appellant's first and second declarations as both added relevant information raised by materials already in the record. *Jessie*, 79 M.J. 445. Appellant's record of trial included references to childcare challenges, confinement conditions, and medical challenges Appellant faced with her pregnancy and mental health. Both declarations contained additional information related to Appellant's medical situation and conditions of confinement. As such, they are relevant to explain how Appellant felt her plea was involuntary or coerced.

#### a. Voluntariness of Plea

Turning to Appellant's claim, Appellant's admissions on the record contradict her post-trial claim that she "was under extreme duress and it was impossible for her to make a free and voluntary decision, and she felt coerced to accept a plea deal." During her court-martial, Appellant repeatedly stated she was pleading guilty voluntarily and of her own free will. Because Appellant told the military judge she was prioritizing her daughter over various appointments and orders related to the Air Force, the district trial counsel and the military judge took time to explore whether she had any "legal justification" or "excuse" in regard to her offenses. Appellant repeatedly denied any excuse. If she felt coerced to plead guilty or coerced into committing the offenses in the first place, she had multiple opportunities to voice those concerns during the court-martial.

Appellant now claims "the Air Force coerced [her] into a position where she was forced to plead guilty to protect her child." She focused on her separation from her daughter and her concerns that her mother was physically unfit to take care of her child. Appellant claims the only way out of confinement was to sign a plea agreement. However, the record does not show evidence that the

plea agreement was her only way out of confinement. If she believed she would get out of confinement quicker or serve a shorter sentence in confinement if she pled guilty, this does not mean she was coerced. We appreciate that Appellant wanted to have relief from confinement as quickly as possible in order to no longer be separated from her children, but separation from children does not amount to force or threats against her. As such, Appellant's post-trial claims are insufficient to overcome "on the record assurances of voluntariness" especially when such assurances were discussed at length at trial and highlighted in the plea agreement. *Hancock*, at \*16-17.

Furthermore, when we look at "all relevant circumstances," we find Appellant's plea was voluntary. *Brady*, 397 U.S. at 749. The record shows Appellant had six months of convalescent and maternity leave to come up with a plan for childcare upon her return to work. Members of her unit testified that they tried to accommodate her, and Appellant had access to multiple resources and personnel to help her secure childcare. Turning to Appellant's time in pretrial confinement, we cannot find anything in the record that would show that Appellant or her mother would be precluded from similar resources or support. Furthermore, Appellant was provided with multiple opportunities at trial to let the military judge know she felt coerced into pleading guilty in order to protect her child. Appellant did not do so. In fact, she specifically told the military judge she was not coerced into committing the crimes in the first place, nor was she coerced into pleading guilty.

### b. Impact of Confinement

Appellant now asks this court to consider her medical and mental health conditions that "made [her] confinement unique and help explain how [her] will was overborne." The conditions of Appellant's confinement were discussed at her court-martial. Appellant's trial defense counsel stated that they believed Appellant had been punished in a way that constituted illegal pretrial confinement but understood "that motion had been waived." The military judge made a point to confirm that Appellant understood that one of the terms of her plea agreement was "the waiver of motions" provision and asked Appellant again if it is "still [her] desire to waive any motion that could be made pursuant to that illegal pretrial punishment in order to gain the benefit of [her] plea agreement." Appellant maintained she desired to waive any motion.

Appellant's desire to leave confinement quickly is a reasonable factor for her to consider when deciding to plead guilty, as leaving confinement is an example of a "future benefit" recognized in a plea agreement. *See Inong*, 57 M.J. at 503 n.5. Appellant discussed the issue of her confinement conditions with her counsel and the military judge, and she felt that waiving the matter was in her best interest. The record shows the voluntariness of this decision was fully explored and we do not find any additional information that compels

us to find her "will was overborne" and her plea was involuntary. *Brady*, 397 U.S. at 750.

While Appellant states on appeal that she was not able to adequately consult with her trial defense counsel and felt that she would lose her representation if she did not plead guilty, this assertion is not supported by the record. Instead, Appellant told the military judge that she had enough time and opportunity to discuss her agreement with her counsel. She stated she was satisfied that her trial defense counsel's advice was in her best interest, and she had fully consulted with her counsel and received the full benefit of their advice. Additionally, the record shows that Appellant worked with her counsel to a significant degree based on other matters in the record apart from the court-martial proceeding.

We have carefully considered Appellant's other complaints regarding the reasons she felt coerced into pleading guilty, such as her leadership "abusing the situation to manipulate the system," and "filing a false [Child Protective Services] report." Looking at the relevant circumstances surrounding her plea, we do not find these instances involved actual or threatened physical harm or mental coercion that would overbear Appellant's will. *Id.* Nor do we find these complaints would cause her guilty plea to be coerced.

**B. Entry of Judgment Correction**

**1. Additional Background**

Before Appellant was arraigned, the trial counsel, on 5 October 2023, marked the charge sheet to indicate the convening authority had ordered "Charge I" and its Specification (failure to go to appointed place of duty, on divers occasions, in violation of Article 86, UCMJ) to be withdrawn and dismissed without prejudice. However, while the trial counsel lined out the affected charge and its specification, he did not renumber the remaining charges and specifications as required by R.C.M. 604(a), Discussion. On 13 October 2023, Appellant was arraigned on all remaining charges and specifications, which appear on the entry of judgment (EoJ) and Statement of Trial Results (STR). "Charge I" and its Specification do not appear on the EoJ, thus the reason for Appellant's second assignment of error.

While all charges and specifications were referred to a special court-martial on 10 August 2023, and "Charge I" and its Specification was withdrawn and dismissed without prejudice before arraignment, Charge II and its Specifications remained on the charge sheet during trial and in the plea agreement; however, "Charge II" was referred to as "the Charge" and that same language transferred later over to the EoJ and STR. Therefore, these post-trial documents refer to only one "Charge" with its specifications, and the "Additional Charges."

**2. Law and Analysis**

Proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted).

R.C.M. 1101(a) and 1111(b) set forth the contents of the STR and EoJ respectively. Regarding findings, each charge and specification *referred* to trial must be included. *See* R.C.M. 1101(a)(1); R.C.M. 1111(b)(1).

A Court of Criminal Appeals "may modify a judgment in the performance of [its] duties and responsibilities." R.C.M. 1111(c)(2).

The EoJ and STR contain findings on only the arraigned offenses; as such "Charge I" and its Specification are missing. Therefore, both documents failed to include the entire set of "findings" as required under R.C.M. 1101 and 1111.

Appellant urges us to exercise our authority to modify these documents to correctly reflect "Charge I" and its Specification. Appellant points out that if we modify the EoJ to reflect Charge I, we would be required to renumber what the EoJ lists as "Charge" to "Charge II" mirroring what is still listed on the Charge Sheet. We agree. *See United States v. Norris*, No. ACM 24045, 2025 CCA LEXIS 298, *13 (A.F. Ct. Crim. App. 30 Jun. 2025) (unpub. op.) (court modified the EoJ to include the withdrawn and dismissed charges and their specification).

Appellant also requests that to alleviate any possible confusion when comparing the record to the modified EoJ, this court make clear in our decision that "(1) the court-martial proceedings, Appellant's offer for a plea agreement, and various other items throughout the record make no reference to "Charge I" or "Charge II," and (2) throughout the record what would now be entered as "Charge II" was consistently referred to as "the Charge" and its "Specification."

We agree that this situation could lead to confusion. Therefore, in our modification of the EoJ, this court includes a note that references to "the Charge" are actually references to "Charge II."

### III. CONCLUSION

We modify the entry of judgment to insert the following language with respect to the missing charge and its specification:

CHARGE I, Article 86, UCMJ: Plea: None entered. Finding: Withdrawn and Dismissed without prejudice before arraignment.

Specification: Was, at or near Joint Base McGuire-Dix-Lakehurst, New Jersey, on divers occasions, between on or about 13

June 2023 and 23 June 2023, without authority, fail to go at the time prescribed to her appointed place of duty, to wit: 87th Medical Group.

Plea: None entered. Finding: Withdrawn and Dismissed without prejudice before arraignment.

We also modify "Charge" to "Charge II."[9] The Additional Charges and their specifications remain unchanged.

The findings are correct in law. Article 66(d), UCMJ, 10 U.S.C. § 866(d). *Manual for Courts-Martial, United States* (2024 ed.). In addition, the sentence as entered is correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[9] While we modify the EoJ in accordance with R.C.M. 1111(c)(2), this will not change reference to "the charge" in the record of trial.